**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRENNAN CENTER FOR JUSTICE,
120 Broadway, #1750
New York, NY 10271

THE PROTECT DEMOCRACY PROJECT, INC., 2020 Pennsylvania Avenue, NW, #163
Washington, DC 20006,

Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530

U.S. DEPARTMENT OF HOMELAND SECURITY, 245 Murray Lane, SW
Washington, DC 20528

OFFICE OF MANAGEMENT AND BUDGET,
725 17th Street, NW
Washington, DC 20503

Defendants.

Civil Action No.:

**COMPLAINT**

Plaintiffs Brennan Center for Justice ("Brennan Center") and The Protect Democracy Project, Inc. ("Protect Democracy") (collectively, "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel defendants U.S. Department of Justice ("DOJ"), U.S. Department of Homeland Security ("Homeland Security"), and U.S. Office of Management and Budget ("OMB") (collectively, "Defendants") to disclose records regarding the "Presidential Advisory Commission on Election Integrity" (the "Commission") requested by Plaintiffs under FOIA.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

3. Plaintiff Brennan Center for Justice at N.Y.U. School of Law is a not-for-profit nonpartisan law and policy institute that seeks to improve the nation's systems of democracy and justice. The Brennan Center works to eliminate barriers to full political participation and to ensure that public policy and institutions reflect all members of our diverse society. The Brennan Center regularly writes and publishes articles and makes appearances in a wide range of media outlets regarding voting rights, election administration, and government oversight. The Brennan Center maintains offices in New York City and in Washington, DC.

4. Plaintiff Protect Democracy is an organization awaiting section 501(c)(3) status, incorporated under the laws of the District of Columbia. Protect Democracy's mission is to prevent those in power from depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate sovereignty. As part of this mission, Protect Democracy seeks to inform public understanding of operations and activities of the government by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Protect Democracy regularly requests such government information pursuant to FOIA. Protect Democracy has been held to be an organization that is "primarily engaged in disseminating information."[1]

---

[1] *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, No. 17-CV-00842 (CRC), 2017 WL 2992076 (D.D.C. July 13, 2017).

5. Defendant DOJ is an agency of the executive branch of the federal government of the United States and includes the Office of Information Policy and Office of Legal Counsel. DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f), and has possession, custody, and control of documents that Plaintiffs seek in response to their FOIA requests.

6. Defendant Homeland Security is an agency of the executive branch of the federal government of the United States. Homeland Security is headquartered at 245 Murray Lane, SW, Washington, DC 20528. Homeland Security is an "agency" within the meaning of 5 U.S.C. § 552(f), and has possession, custody, and control of documents that Plaintiffs seek in response to their FOIA requests.

7. Defendant OMB is an agency of the executive branch of the federal government of the United States. OMB is headquartered at 725 17th Street, NW, Washington, DC 20503. OMB is an "agency" within the meaning of 5 U.S.C. § 552(f), and has possession, custody, and control of documents that Plaintiffs seek in response to their FOIA requests.

## **STATEMENT OF FACTS**

*President Trump's Advisory Commission on Election Integrity*

8. On May 11, 2017, President Donald J. Trump issued Executive Order 13799 establishing a "Presidential Advisory Commission on Election Integrity," ostensibly to "promote fair and honest Federal elections." According to the Executive Order, the Commission is "study[ing] the registration and voting processes used in Federal elections." The Executive Order provides that the Commission shall submit a report to the President that identifies "those laws, rules, policies, activities, strategies, and practices" that either "enhance" or "undermine" "the American people's confidence in the integrity of the voting process used in Federal

elections," and "those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registration and improper voting, including fraudulent voter registrations and fraudulent voting."

9. The Commission is chaired by the Vice President of the United States, and its vice chair is Kansas Secretary of State Kris Kobach.

10. Other members of the Commission include Hans von Spakovsky (Senior Legal Fellow, Heritage Foundation), J. Christian Adams (President and General Counsel, Public Interest Legal Foundation), and Ken Blackwell (Former Ohio Secretary of State). These commissioners have long records of championing measures that impede eligible voters from participating in elections. For example, von Spakovsky helped lead an effort in 2005 to pass a law in Georgia which required people to present government-issued photo identification to vote as well as efforts to promote aggressive purges of state voter rolls in and around 2008. He is seen as one of the leading figures in the country in promoting policies to reduce access to voting by claiming widespread voter fraud.[2] Similarly, Adams has a history of promoting voting restrictions. He serves as the president and general counsel of the Public Interest Legal Foundation, which works to promote aggressive purges of voter rolls and promotes the idea that non-citizens vote in large numbers.[3] And Blackwell has implemented policies that restricted voting access in Ohio in 2004 and 2006, including a policy of rejecting voter registration forms

---

[2] Alex Horton & Gregory S. Schneider, *Trump's Pick to Investigate Voter Fraud is Freaking Out Voting Rights Activists*, WASHINGTON POST, June 30, 2017, *available at* https://www.washingtonpost.com/news/post-nation/wp/2017/06/30/trumps-pick-to-investigate-voter-fraud-is-freaking-out-voting-rights-activists/?utm_term=.d5e907e50cfd

[3] Meet the Members of Trump's 'Voter Fraud' Commission, Brennan Center for Justice, July 18, 2017, https://www.brennancenter.org/analysis/meet-members

that were not submitted on a certain grade of card stock, and a policy of limiting access to provisional ballots in violation of federal law.[4]

11. In public statements leading up to the creation of the Commission, President Trump has suggested that the Commission's purpose would be to substantiate the President's conviction, not founded in any credible evidence, that voter fraud is rampant in U.S. elections. On November 27, 2016, for instance, President Trump tweeted that "[i]n addition to winning the Electoral College in a landslide, I won the popular vote if you deduct the millions of people who voted illegally."[5] On January 23, 2017, President Trump told congressional leaders that 3 to 5 million "illegals" had voted in the 2017 federal election.[6] Subsequently, on January 25, 2017, President Trump tweeted that he would be "asking for a major investigation into VOTER FRAUD."[7]

12. On information and belief, the Commission was also created to justify legislative changes to impose new barriers to exercising the franchise. In recently disclosed emails between Kobach and the Trump transition team on November 9 and 10, 2016, Kobach indicated he was working with other advisors on "legislation drafts for submission to Congress early in the administration," and that he had already started drafting "amendments to the NVRA [National

---

[4] *Id.*

[5] Cleve R. Wootson Jr., *Donald Trump: 'I Won the Popular Vote if You Deduct the Millions of People Who Voted Illegally*, WASHINGTON POST, Nov. 27, 2017, *available at* https://www.washingtonpost.com/news/the-fix/wp/2016/11/27/donald-trump-i-won-the-popular-vote-if-you-deduct-the-millions-of-people-who-voted-illegally/?utm_term=.eed362335b3e.

[6] Abby Phillip & Mike DeBonis, *Without Evidence, Trump Tells Lawmakers 3 Million to 5 Million Illegal Ballots Cost Him the Popular Vote*, WASHINGTON POST, Jan. 23, 2017, *available at* https://www.washingtonpost.com/news/post-politics/wp/2017/01/23/at-white-house-trump-tells-congressional-leaders-3-5-million-illegal-ballots-cost-him-the-popular-vote/?utm_term=.50b6369f474a.

[7] Curt Mills, *Trump Calls for Voter Fraud Investigation*, US NEWS, Jan. 25, 2017, *available at* https://www.usnews.com/news/politics/articles/2017-01-25/donald-trump-tweets-call-for-major-investigation-into-voter-fraud.

Voter Registration Act of 1993] to make clear that proof of citizenship requirements are permitted."[8]

13. On June 28, 2017, Kobach sent letters to chief state election officials requesting that they submit "publicly-available voter roll data" and feedback on how to improve election integrity by July 14, 2017. The requested voter roll data included:

a. the full first and last names of all registrants, middle names or initials if available,

b. addresses,

c. dates of birth,

d. political party (if recorded),

e. last four digits of social security number if available,

f. voter history (elections voted in) from 2006 onward,

g. active/inactive status, cancelled status,

h. information regarding any felony convictions,

i. information regarding voter registration in another state,

j. information regarding military status, and

k. overseas citizen information.

Kobach also asked state election officials to provide, among other things, recommendations regarding changes to federal election laws that would enhance the integrity of federal elections, information regarding instances of voter fraud or registration fraud, and information regarding convictions for election-related crimes since the November 2000 federal election.

---

[8] Christopher Ingraham, *Vice Chair of Trump's Voter Fraud Commission Wants to Change Federal Law to Add New Requirements for Voting, Email Shows*, WASHINGTON POST, July 17, 2017, *available at* https://www.washingtonpost.com/news/wonk/wp/2017/07/17/vice-chair-of-trumps-voter-fraud-commission-wants-to-change-federal-law-to-make-it-harder-to-vote-email-shows/?utm_term=.77d87d87f27d.

14. In his June 28, 2017 letter requests, Kobach stated that "any documents that are submitted to the full Commission will also be made available to the public," although Kobach has since represented that this statement applies only to "narrative responses" submitted by states to the Commission and that voter roll data will be de-identified prior to any public release of documents.

15. A first meeting of the Commission was held on July 19, 2017. President Trump attended and spoke at that meeting. During his statements, Trump stressed that "voter fraud," including "[a]ny form of illegal or fraudulent voting, whether by non-citizens or the deceased," was something that his administration "can't let . . . happen." He also suggested that states that are unwilling to share the voter roll information requested by Kobach are "worried about" having "something" to hide.[9]

16. On July 26, 2017, Kobach sent letters to chief state election officials renewing his request for voter roll data and feedback on the federal election process.

17. The Commission's next meeting is scheduled for September 2017.

18. The Commission's actions have already had a chilling effect on voter registration. For example, nearly 4,000 people in Colorado canceled their voter registrations after Kobach issued his requests for state voter roll data.[10] Similarly, over 1,715 Florida voters cancelled their voter registrations in the twenty-day period after Kobach requested state voter roll data, a 117

[9] Pam Fessler & Brett Nelly, *Talk of Voter Fraud Dominates First Meeting of Election Integrity Commission*, NPR, July 18, 2017, *available at* http://www.npr.org/2017/07/19/538152713/talk-of-voter-fraud-dominates-first-meeting-of-election-integrity-commission.

[10] Aidan Quigley, *Trump Voter Fraud Probe Sparks Wave of Canceled Registrations in Colorado*, NEWSWEEK, July 17, 2017, *available at* http://www.newsweek.com/thousands-colorado-democrats-and-independents-cancel-voter-registration-after-637996.

percent increase in cancellations over the same period in the prior year.[11] Multiple election officials have said that the volume of registration cancellations in response to Kobach's requests is unprecedented. Far from demonstrating evidence of voter fraud, on information and belief such cancellations suggest that many eligible voters are deeply concerned that their personal information may be shared or disclosed publicly by the Commission.

19. The Commission's actions have also raised questions about its ability to adequately protect the privacy of voters. For example, on July 14, 2017, the Commission published to the general public comments and feedback it had received at a Commission email address without redacting commenters' names or, in many instances, other personal information, including email addresses.[12] This unanticipated, wide release of personal information demonstrates the need for the public to have more information about the Commission's methods for collecting, protecting, and disclosing voter roll data and other information about the federal election process.

20. Neither the President nor any executive branch official has publicly released any legal analysis, memorandum, or other written record of how the Commission will identify practices that enhance or undermine confidence in federal elections or investigate vulnerabilities in voting systems used for federal elections.

21. In order for Congress and state and local elected officials to exercise their roles as representatives of the people, the people must be able to provide their representatives with their

---

[11] Asa Royal, *Florida Voters Cancel Their Own Registration. Is Trump's Fraud Commission the Cause?*, TAMPA BAY TIMES, Aug. 15, 2017, *available at* http://www.tampabay.com/news/florida-voters-cancel-their-own-registration-is-trumps-fraud-commission/2332036.

[12] Scott Neuman, *Vote Fraud Commission Releases Public Comments, Email Addresses and All*, NPR, July 14, 2017, *available at* http://www.npr.org/sections/thetwo-way/2017/07/14/537282309/vote-fraud-commission-releases-public-comments-email-addresses-and-all.

views. The public cannot do this in an informed way about an issue as critically important as their right to vote in the absence of information from Defendant agencies about the Commission.

22. The Commission and the issue of voter fraud have been the focus of widespread and extensive public interest and media coverage, reflecting the public's urgent concern about election integrity, data privacy, and whether the Commission is pursuing an illegitimate or pre-determined agenda for purposes of voter suppression.

23. Because the Commission is proceeding with its effort to collect state voter roll data, and because other actions by the Commission that may lead to increased voter disenfranchisement or voter suppression may also be imminent, it is imperative that the public be informed immediately of the Commission's intentions and processes in order for the public to formulate and communicate their views to state officials, Congress, and President Trump's Commission.

24. Plaintiffs intend to share any documents transmitted via FOIA with the public (subject to any and all appropriate redactions of personal information), and to provide information and analysis about those documents as appropriate.

*Plaintiffs' FOIA Requests and Defendants' Responses*

*DOJ Office of Information Policy and Office of Legal Counsel*

25. On May 15, 2017, Plaintiffs sent a FOIA request to Defendant DOJ, and specifically to the Office of Information Policy and Office of Legal Counsel.

26. On information and belief, Defendant DOJ – and the Office of Information Policy and Office of Legal Counsel, specifically – has documents related to the Commission, including documents related to the reasons for forming the Commission, the goals and missions of the Commission, and the Commission's intended activities. This belief is based upon statements

made by Kobach indicating that he would seek "information" from DOJ regarding issues related to voter fraud,[13] statements given at the Commission's first meeting stating that it intends to "find out from the U.S. attorneys' offices all across the country whether they are complying with" the National Voter Registration Act and to seek information regarding whether US attorneys' office are sharing data with states regarding convictions that might disqualify individuals from voting, and statements from senior White House officials indicating that DOJ would be "looking [] very seriously and very hard" at issues of voter fraud.[14]

27. Plaintiffs' May 15, 2017 FOIA request to DOJ sought the following records:

> 1. All communications, including but not limited to emails and memoranda, between any Department of Justice ("DOJ" or "Department") officer, employee, or agent, or any White House liaison to the Department, and any other person, including but not limited to any officer, employee, or agent of the White House or DOJ, or any member of the presidential transition team or the presidential campaign of Donald Trump, regarding the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system.
>
> 2. All communications, including but not limited to emails and memoranda, between any Department officer, employee, or agent, or any White House liaison to the Department, and any member of the Presidential Advisory Commission on Election Integrity, other than Vice President Michael Pence, since November 8, 2016.
>
> 3. All documents relating to the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system, including all documents discussing or making reference to the following subjects:

[13] Dave Boyer, *Voter Fraud and Suppression Commission to Meet in July*, WASHINGTON TIMES, June 27, 2017, *available at* http://www.washingtontimes.com/news/2017/jun/27/voter-fraud-and-suppression-commission.

[14] Glenn Kessler, *Stephen Miller's Bushels of Pinocchios for False Voter-Fraud Claims*, WASHINGTON POST, Feb. 12, 2017, *available at* https://www.washingtonpost.com/news/fact-checker/wp/2017/02/12/stephen-millers-bushels-of-pinocchios-for-false-voter-fraud-claims/?utm_term=.1e53ead71b5e.

a) The Executive Order creating the Presidential Advisory Commission on Election Integrity;

b) The reasons for forming the Presidential Advisory Commission on Election Integrity;

c) The goals and mission of the Presidential Advisory Commission on Election Integrity; and

d) The membership of the Presidential Advisory Commission on Election Integrity, including the criteria for selection of its members.

28. Plaintiffs also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e).

29. Plaintiffs also requested fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), 5 U.S.C. § 552(a)(4)(A)(iii), and 28 C.F.R. § 16.10(k).

30. On May 24, 2017, the DOJ Office of Information Policy acknowledged receipt of the request on May 15, 2017, and assigned it four case reference numbers (DOJ-2017-004083, -004291, -004292, -004293). The Office of Information Policy did not respond to the request for expedited processing or for a fee waiver.

31. On June 8, 2017, the DOJ Office of Legal Counsel acknowledged receipt of the request on May 15, 2017, and assigned it a case reference number (FY17-218). The DOJ Office of Legal Counsel granted the request for expedited processing, but indicated that it had not yet initiated process and stated that, because of the considerable number of FOIA requests received, it was "likely that we will be unable to respond to the request within the twenty-day statutory deadline." The DOJ Office of Legal Counsel further stated that it would make a decision on the request for a fee waiver after determining whether fees would be assessed for the request.

32. Pursuant to FOIA, within 20 business days of receipt of the requests – that is, by June 13, 2017, at the latest – Defendant DOJ was required to "determine . . . whether to comply

with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor," Plaintiffs' right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i) & (B)(i).

33. To date, Defendant DOJ has failed to make the required determination and notifications.

*DHS*

34. On May 17, 2017, Plaintiffs sent a FOIA request to Defendant DHS.

35. On information and belief, Defendant DHS has documents related to the Commission, including documents related to the reasons for forming the Commission, the goals and missions of the Commission, and the Commission's intended activities. This belief is based upon statements made by Kobach indicating his belief that DHS has "data" regarding issues related to voter fraud,[15] representations from both Kobach and a spokesman for Vice President Pence that the Commission intends to "check" the voter roll information it has requested "against the federal government's database of non-citizens" (*i.e.* against information maintained by DHS),[16] and statements from members at the Commission's first meeting that the Commission intends to collect "helpful" data already in the possession of the federal government, including from DHS databases. Prior to the Commission's creation, Kobach also stated that it would have

[15] Dave Boyer, *Voter Fraud and Suppression Commission to Meet in July*, WASHINGTON TIMES, June 27, 2017, *available at* http://www.washingtontimes.com/news/2017/jun/27/voter-fraud-and-suppression-commission-to-meet-in-/.

[16] Jessica Huseman, *Election Experts See Flaws in Trump Voter Commission's Plan to Smoke out Fraud*. PROPUBLICA, July 6, 2017, *available at* https://www.propublica.org/article/election-experts-see-flaws-trump-voter-commissions-plan-to-smoke-out-fraud.

a "full-time staff" from DHS,[17] and was photographed holding documents emblazoned with the title "Department of Homeland Security."[18]

36. Plaintiffs' May 17, 2017 FOIA request to DHS sought the following records:

> 1. All communications, including but not limited to emails and memoranda, between any Department of Homeland Security ("DHS" or "Department") officer, employee, or agent, or any White House liaison to DHS, and any other person, including but not limited to any officer, employee, or agent of the White House or DHS, or any member of the presidential transition team or the presidential campaign of Donald Trump, regarding the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system.
>
> 2. All communications, including but not limited to emails and memoranda, between any DHS officer, employee, or agent, or any White House liaison to DHS, and any member of the Presidential Advisory Commission on Election Integrity, other than Vice President Michael Pence, since November 8, 2016.
>
> 3. All documents relating to the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system, including all documents discussing or making reference to the following subjects:
>
> a) The Executive Order creating the Presidential Advisory Commission on Election Integrity;
>
> b) The reasons for forming the Presidential Advisory Commission on Election Integrity;
>
> c) The goals and mission of the Presidential Advisory Commission on Election Integrity;

[17] Katy Ergen & Bryan Lowry, *Kobach Says he Turned Down White House Job*, KANSAS CITY STAR, June 8, 2017, *available at* http://www.kansascity.com/news/politics-government/article155170989.html.

[18] Caroline Kenny, *Photo of Trump-Kobach Meeting Reveals Apparent DHS Proposal*, CNN, Nov. 21, 2016, *available at* http://www.cnn.com/2016/11/21/politics/kris-kobach-donald-trump-department-of-homeland-security/index.html.

d) The membership of the Presidential Advisory Commission on Election Integrity, including the criteria for selection of its members; and

e) The staffing of the Presidential Advisory Commission on Election Integrity, including job descriptions, organization charts, and criteria for hiring.

37. Plaintiffs also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e).

38. Plaintiffs also requested fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), 5 U.S.C. § 552(a)(4)(A)(iii), and 28 C.F.R. § 16.10(k).

39. On May 19, 2017, Defendant DHS acknowledged receipt of the request on May 17, 2017, and assigned it a case reference number (2017-HQFO-00794). In its letter, DHS granted Plaintiffs' request for expedited processing and fee waiver, but also indicated that it had not yet initiated processing and claimed unusual circumstances – that the request "seeks documents that will require a thorough and wide-ranging search" – such that it would need an additional 10 days to make a determination.

40. Pursuant to FOIA, within 30 business days of receipt of Plaintiffs' request – that is, by June 28, 2017 – DHS was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor," Plaintiffs' right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i) & (B)(i).

41. To date, Defendant DHS has failed to make the required determination and notifications.

*OMB*

42. On May 17, 2017, Plaintiffs sent a FOIA request to Defendant OMB.

43. On information and belief, Defendant OMB has documents related to the Commission, including documents related to the reasons for forming the Commission, the goals and missions of the Commission, and the Commission's intended activities. Among other things, agencies are statutorily required to request approval from OMB's Office of Information and Regulatory Affairs regarding information collection requests, like that issued from the Commission to the state election officials. The OMB is also generally responsible for assisting the President in overseeing the "implementation of his vision across the Executive Branch,"[19] which, upon information and belief, would include providing assistance to or coordinating with the Commission.

44. Plaintiffs' May 17, 2017 FOIA request to OMB sought the following records:

> 1. All communications, including but not limited to emails and memoranda, within the custody or control of OMB regarding the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system.
>
> 2. All communications, including but not limited to emails and memoranda, within the custody or control of OMB with any member of the Presidential Advisory Commission on Election Integrity, other than Vice President Michael Pence, since November 8, 2016.
>
> 3. All documents relating to the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system, including all documents discussing or making reference to the following subjects:
>
> a) The Executive Order creating the Presidential Advisory Commission on Election Integrity;
> b) The reasons for forming the Presidential Advisory Commission on Election Integrity;
> c) The goals and mission of the Presidential Advisory Commission on Election Integrity;

[19] The White House, Office of Management and Budget, https://www.whitehouse.gov/omb (last visited Aug. 15, 2017).

d) The membership of the Presidential Advisory Commission on Election Integrity, including the criteria for selection of its members;

e) The budget of the Presidential Advisory Commission on Election Integrity, including line items for salaries, research, travel, meetings, hearings, and public materials; and

f) The staffing of the Presidential Advisory Commission on Election Integrity, including job descriptions, organization charts, and criteria for hiring.

45. Plaintiffs also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e).

46. Plaintiffs also requested fee waivers pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), 5 U.S.C. § 552(a)(4)(A)(iii), and 28 C.F.R. § 16.10(k).

47. On May 18, 2017, Defendant OMB acknowledged receipt of the request on May 18, 2017, and assigned it a case reference number (2017-231). OMB did not respond to the request for expedited processing or for a fee waiver.

48. Pursuant to FOIA, within 20 business days of receipt of Plaintiffs' request – that is, June 16, 2017 – OMB was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor," Plaintiffs' right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i).

49. To date, Defendant OMB has failed to make the required determination and notifications.

**COUNT I**

50. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 as if fully set forth herein.

51. Defendants are in violation of FOIA by failing to respond to Plaintiffs' requests within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiffs' requests.

## COUNT II

52. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 as if fully set forth herein.

53. Defendants DOJ and OMB are in violation of FOIA by failing to grant expedited processing to Plaintiff under 5 U.S.C. § 552(a)(6)(E).

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Order Defendants, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiffs' requests;

(2) Order Defendants, by a date certain, to disclose all non-exempt records responsive to Plaintiffs' FOIA requests, as a well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(3) Order Defendants to grant Plaintiffs' requests for a fee waiver;

(4) Order Defendants DOJ and OMB to grant Plaintiffs' request for expedited processing of its request;

(5) Award Plaintiffs its costs and reasonable attorney fees incurred in this action; and

(6) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Date: August 21, 2017

Jeremy M. Creelan
David W. Sussman
Emily S. Deininger
Justin O. Spiegel
Derek Stegelmeier
Carl N. Wedoff
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 891-1600
jcreelan@jenner.com
dsussman@jenner.com
edeininger@jenner.com
jspiegel@jenner.com
dstegelmeier@jenner.com
cwedoff@jenner.com

Laurence Schwartztol
THE PROTECT DEMOCRACY PROJECT, INC.
2020 Pennsylvania Ave., NW #163
Washington, DC 20006
Phone: (202) 599-0466
larry.schwartztol@protectdemocracy.org

Wendy R. Weiser
BRENNAN CENTER FOR JUSTICE
at New York University
School of Law
161 Avenue of the Americas
New York, New York 10013
Phone: (646) 292-8335
weiserw@brennan.law.nyu.edu

*Counsel for Plaintiffs*