919 THIRD AVENUE  NEW YORK  NEW YORK  10022-3908

**JENNER&BLOCK** LLP

Jeremy M. Creelan
Tel  212 891-1678
jcreelan@jenner.com

November 20, 2017

**VIA ECF**

Honorable Katherine B. Forrest
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Brennan Center for Justice, et al. v. Dep't of Justice, et al., No. 17-cv-6335 (KBF)*

Dear Judge Forrest:

We submit this letter on behalf of our clients, Plaintiffs Brennan Center for Justice ("Brennan Center") and The Protect Democracy Project ("Protect Democracy") (collectively, "Plaintiffs"), to provide the Court with Plaintiffs' position regarding a reasonable production schedule for responsive FOIA records in advance of the scheduling conference to be held this Tuesday, Nov. 21, 2017.

As set out in the Joint Letter dated Nov. 15, 2017 (Docket No. 24), the parties have been unable to agree to a timeline for record production.  Plaintiffs respectfully request that the Court set a production schedule (1) requiring Defendants Department of Justice Civil Rights Division ("DOJ-CRT"), General Services Administration ("GSA"), Office of Management and Budget ("OMB"), and Department of Homeland Services ("DHS"), to produce responsive records by December 29, 2017 and Vaughn indexes by January 12, 2018, and (2) requiring Defendants Department of Justice Office of Information Policy ("DOJ-OIP") and Department of Justice Office of Legal Counsel ("DOJ-OLC") to produce responsive records by January 31, 2018 and Vaughn indexes by February 14, 2018.  For the reasons set forth below, Plaintiffs believe that this requested production schedule is generous and reasonable and will permit Plaintiffs to review the records – and address any insufficiencies of the production – in the timely manner necessitated by the records' relevance to the ongoing public debate regarding the Presidential Advisory Commission on Election Integrity (the "Voting Commission") and voting rights, one of the foundational rights in our democracy.

I.   **Background Regarding Plaintiffs, the Commission, and the FOIA Requests**

Plaintiffs are both not-for-profit organizations who actively seek to inform the public on issues relating to voting rights, government oversight, and election administration.  The Brennan Center at New York University School of Law is at the center of the fight to protect the right to

Honorable Katherine B. Forrest
Page 2

vote for every eligible citizen; it is actively involved in voting rights litigation, regularly provides testimony and comments to Congress regarding proposed laws and regulations, and writes and publishes articles and makes appearances in a wide variety of media outlets. Protect Democracy seeks to inform public understanding of operations and activities of the government that could erode the rules, practices, and freedoms that underpin our ability as a self-governing people to hold our leaders accountable, including, most crucially, the right to vote.

The Voting Commission was formed by President Donald J. Trump on May 11, 2017 via Executive Order ostensibly to "promote fair and honest federal elections."[1] The Voting Commission has been charged with submitting a report to the President that identifies "those laws, rules, policies, activities, strategies, and practices" that either "enhance" or "undermine" "the American people's confidence in the integrity of the voting process used in Federal elections" and "vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registration and improper voting."[2] The Voting Commission's charter permits it to operate until May 2019, but the White House announced that it was expected to complete its work in approximately one year and issue a report in 2018 – thus making necessary the Defendants' production of responsive documents in early 2018 to inform the public properly of the Voting Commission's origins and operations.[3] The Voting Commission has already held two of its five anticipated meetings,[4] having met in July and September 2017.

On May 15 and July 25, 2017, Plaintiffs submitted their FOIA requests to Defendants. Plaintiffs' first requests asked for documents and communications regarding the formation of the Voting Commission, its goals and mission, and its intended activities. The second requests asked for documents and communications regarding the Voting Commission's potential use of agency lists or databases, including DHS's database for alien verification for entitlement programs, to compare against voter roll data; selection of Voting Commission members; the Voting Commission's first meeting held in July 2017; the Voting Commission's investigatory activities and methodology; and communications with state election officials regarding voter data files.

Plaintiffs requested these records because the work currently being undertaken by the Voting Commission has been shrouded in secrecy. Representatives of the public, including the media and entities like Plaintiffs, have sought to protect voting rights by requesting information about the Voting Commission's activities. The Vice Chair of the Voting Commission, Kansas Secretary of State Kris Kobach, has a long history of attempting to restrict voting access.[5] And

---

[1] Executive Order 13799, May 11, 2017.

[2] *Id.*

[3] The White House, Office of the Press Secretary, *President Announces Formation of Bipartisan Presidential Commission on Election Integrity*, May 11, 2017, https://www.whitehouse.gov/the-press-office/2017/05/11/president-announces-formation-bipartisan-presidential-commission.

[4] Charter, Presidential Advisory Commission on Election Integrity ¶ 9, https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/commission-charter.pdf.

[5] *See e.g.,* Camila Domonoske, *As November Approaches, Courts Deal Series of Blows To Voter ID Laws*, NPR, Aug. 2, 2016, https://www.npr.org/sections/thetwo-way/2016/08/02/488392765/as-november-approaches-courts-deal-series-of-blows-to-voter-id-laws (describing courts overturning Mr. Kobach's order that voters cannot register without showing proof of citizenship); Tomas Lopez & Jennifer L. Clark, Brennan Center for Justice, *Uncovering Kris Kobach's Anti-Voting History*, May 11, 2017, https://www.brennancenter.org/blog/uncovering-kris-

there is good reason to believe that this purportedly bipartisan Voting Commission is not being run in a bipartisan and transparent manner. This past September, a FOIA request from the Campaign Legal Center unearthed an email written by Voting Commission member Hans von Spakovsky asserting that the appointment of any Democrats or "mainstream" Republicans to the Commission would "guarantee its failure."[6] At the request of three Democratic Senators, the Government Accountability Office has agreed to investigate the Voting Commission's failure to submit requested information to members of Congress.[7] And the Voting Commission is currently being sued by one of its own members, who claims that the Voting Commission has violated its transparency obligations under the Federal Advisory Commission Act and excluded him from Voting Commission activities.[8]

On October 30, 2017, counsel for Defendants informed us that DOJ-CRT had identified approximately 80 potentially responsive documents, OMB had identified approximately 1,000 potentially responsive documents, and GSA had identified approximately 1,000 potentially responsive documents. On November 13, 2017, counsel for Defendants further informed us that DHS had identified approximately 2,500 responsive documents, DOJ-OIP had identified approximately 5,700 potentially responsive documents, and DOJ-OLC was still awaiting the completion of its initial searches. Despite the very limited number of potentially responsive documents identified, none of the Defendants has agreed to complete, or even begin, production this year, and, based upon Defendants' proposed production schedule, DHS's and DOJ-OLC's production timeframes could easily stretch into the summer of 2018.

## II.     Plaintiffs' Proposed Production Schedule is Generous and Reasonable

Plaintiffs' May and July 2017 FOIA requests have already been outstanding for six and four months, respectively, and will have been outstanding for at least another month at the time Defendants propose beginning document production. This is well past the 20-day FOIA statutory deadline for a response, 5 U.S.C. § 552(a)(6)(A)(i), even accounting for the 10-day extension available when agencies establish "unusual circumstances," *id.* § 552(1)(6)(B)(i), and clearly violates FOIA's requirement that responsive records be made "promptly available," *id.* § 552(a)(3)(A). As the D.C. Circuit has explained, "promptly available" "typically would mean within days or a few weeks . . . , not months or years." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

Plaintiffs' proposed production schedule – production by the end of December 2017 for all Defendants but DOJ-OLC and DHS, and production by the end of January 2018 for those two agencies – is plainly not burdensome, particularly given that Defendants have made clear that the

---

kobach%E2%80%99s-anti-voting-history (describing Mr. Kobach's history of pursuing strict voting restrictions and making demonstrably false claims about voter fraud, which depressed voter turnout in his state of Kansas).

[6] John Wagner, *Trump Voting Fraud Member Lamented Adding Democrats, 'Mainstream' Republicans*, WASHINGTON POST, Sept. 13, 2017, https://www.washingtonpost.com/politics/trump-voting-panel-member-lamented-inclusion-of-democrats-mainstream-republicans/2017/09/13/03f89a90-98bb-11e7-82e4-f1076f6d6152_story.html?utm_term=.963337928fdb.

[7] Kelsey Tamborrino, *GAO to Investigate Trump's Voter Fraud Commission*, POLITICO, Oct. 26, 2017, https://www.politico.com/story/2017/10/26/gao-trump-voter-fraud-commission-244209.

[8] Compl., *Dunlap v. Presidential Advisory Commission on Election Integrity*, 1:17-cv-02361, (D.D.C. Nov. 16, 2017).

volume of documents being reviewed is very limited.  Complying with that schedule should be practicable for Defendants even considering their alleged resource constraints.  For example, to produce records by December 29th, the DOJ-CRT would have to review the 80 potentially responsive documents it identified at a rate of ***less than two records per business day***, assuming review began on October 30th when we were informed the pool of potentially documents had been identified.  Even accounting for the fact that DHS and DOJ-OIP did not identify their potentially responsive document pools for an additional 11 business days, the necessary pace of review for Defendants would be no more than the following: for OMB and GSA, approximately 24 documents per day; for DHS, approximately 61 documents per day; and for DOJ-OIP, approximately 95 documents per day.  There is no reason to believe that this review pace would place any unusual or unreasonable burden on Defendants.  Yet Defendants have proposed schedules that would delay production for additional months, if not more.

Plaintiffs' proposed production schedule is even more eminently reasonable given that Plaintiffs' FOIA requests are entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E). Plaintiffs have established a "compelling need" for production of these records because Plaintiffs are "primarily engaged in disseminating information" to the public and there is an "urgency to inform the public concerning an actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v).  As noted above, both the Brennan Center and Protect Democracy produce reports and communicate with the public through media outlets, and, as discussed further below, there is urgent need to make information regarding the activities of the Commission – activities that will bear directly upon the citizens' exercise of the franchise as early as the 2018 elections – known to the public prior to the completion of the Commission's report and prior to the 2018 federal mid-term elections.  Indeed, the majority of the Defendants – the DOJ-OIP, DOJ-OLC, DHS, and GSA – have already acknowledged this need and have granted Plaintiffs' requests for expedited processing.  *See* Am. Compl. ¶¶ 33, 46, 52, 69.

### III. Defendants' Proposed Production Schedule Would Moot Plaintiffs' FOIA Requests and Cause Irreparable Harm

Defendants have proposed a production schedule pursuant to which responsive records would not be produced until April 2018 or later.  This production schedule would effectively moot Plaintiffs' FOIA requests, which are intended to shed light upon the origins and operations of the Voting Commission and do so during the Voting Commission's work.

The Voting Commission began its work at a rapid pace.  As noted above, the Voting Commission has met twice to date, thus having completed two of its five anticipated meetings.  Early in the Voting Commission's operations, Vice Chair Kobach issued letters to state chief election officials making sweeping requests for voter data.  *See* Compl. ¶ 14, 17.  According to official White House announcements, the Voting Commission is expected to make its final recommendations as soon as May 2018, and at least before the end of the year 2018.[9]

---

[9] The White Office, Office of the Press Secretary, *President Announces Formation of Bipartisan Presidential Commission on Election Integrity*, May 11, 2017, https://www.whitehouse.gov/the-press-office/2017/05/11/president-announces-formation-bipartisan-presidential-commission.

Honorable Katherine B. Forrest
Page 5

     Assuming the Voting Commission's recommendations are issued by mid-2018 as anticipated, those recommendations are expected to lead in the near-term to the imposition of new laws or regulations regarding federal voting processes.  Notably, given the Voting Commission's actions, and the avowed views of its leadership, Plaintiffs believe that the Voting Commission's recommendations may lead to the imposition of more barriers to the exercise of the right to vote.  *See* Compl. ¶ 13.  President Trump may well seek to impose those additional barriers prior to the upcoming November 2018 federal mid-term elections.  Moreover, the impact of the Voting Commission's recommendations will not be limited to the federal arena.  States – five of which have already, in 2017, enacted bills restricting voter access – are likely to use the Voting Commission's recommendations as a model for, or to inform, their voting rules for state and local elections.  Under these circumstances, any resultant voting restrictions will have immediate and far-reaching consequences.

     Plaintiffs need the requested information to inform the public of the Voting Commission's methods, motivations and procedures, and to respond to its recommendations in a timely manner – before the recommendations are finalized, implemented, and the consequences are potentially irreversible.  Defendants' proposed production schedule would not allow Plaintiffs to do so.  If Defendants' document productions are not completed until April 2018 or later, potential challenges to the sufficiency of those productions will likely not be heard and resolved until at least the summer of 2018, and potentially significantly later.  Defendants' proposed production schedule is therefore likely to lead to production of relevant information far too late for that information to have any impact on the content of, response to, or public debate regarding the Voting Commission's recommendations. The very purpose of the requests and of FOIA's statutory requirements and intent would be frustrated.

     The Voting Commission and the issue of potential voter fraud have recently been the focus of widespread and extensive public interest and media coverage, reflecting the public's urgent concern about election integrity, voting rights, and whether the Voting Commission is pursuing an illegitimate or pre-determined agenda for purposes of voter suppression.[10]  It is essential that Defendants produce the requested records in a timely manner so that such information can be available to inform that public debate.

     Under FOIA, this Court is authorized to mandate a production schedule that reflects this urgency. *See Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement*, 236 F. Supp. 3d 810, 819 (S.D.N.Y. 2017) (ordering the production of agency records within a set period of time because of agency failure to respond within the statutory period); *Cleaver v. Kelley,* 427 F. Supp. 80, 82 (D.D.C. 1976) (ordering production of documents within 21 days and explaining that "exceptional and urgent need [may] justif[y] putting

---

[10] *See e.g.*, Jon Grinspan, *The Right to Vote Is Never Safe*, THE NEW YORK TIMES, Nov. 4, 2017, https://www.nytimes.com/2017/11/04/opinion/sunday/voting-rights-never-safe.html; Celeste Katz, *Trump's Voter Fraud Commission Doesn't Know What It's Doing, Says State Official*, NEWSWEEK, Aug. 1, 2017, http://www.newsweek.com/trumps-voter-fraud-commission-doesnt-know-what-doing-state-official-644804; Christopher Ingraham, *Trump's Voter Fraud Commission Wants to Know Voting History, Party ID and Address of Every Voter in the U.S.*, THE WASHINGTON POST, June 29, 2017, https://www.washingtonpost.com/news/wonk/wp/2017/06/29/trumps-voter-fraud-commission-wants-to-know-the-voting-history-party-id-and-address-of-every-voter-in-america/?utm_term=.0ddcf7e1d160.

[particularly urgent] request[s] ahead of other requests"). Indeed, courts considering situations threatening similar irreparable harm due to likely impending legislation and elections have accelerated production. For example, in *Washington Post v. Department of Homeland Security*, the Court ordered production of responsive records within 10 days where an "impending election" created a significant "likelihood for irreparable harm [if] the plaintiff's FOIA request [did] not receive expedited treatment" because of the need to inform the public about government actions – in that case, wireless surveillance – that it might wish to take into account during the election. 459 F. Supp. 2d 61, 75 (D.D.C. 2006); *see also, Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence,* 542 F. Supp. 2d 1181, 1186 (N.D. Cal. 2008) (finding that a delay in the production of records potentially relevant to imminent legislation "may cause irreparable harm to a vested constitutional interest in the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry"). Similarly, in *Leadership Conference on Civil Rights v. Gonzales*, the Court ordered expedited processing, with production by a set date, because the FOIA requests "could advance the current debate" regarding an issue of "paramount" importance – the future of voting rights in America – and "impact [the] development of the substantive record in favor of re-authorizing or making permanent the special provisions of the Voting Rights Act." 404 F. Supp. 2d 246, 260 (D.D.C. 2005).

  Of course, under 5 U.S.C. § 552(a)(6)(C), "[i]f the Government can show exceptional circumstances," a court "may . . . allow the agency additional time to complete its review of the records." But Defendants have not made the required showing. First, even under Plaintiffs' proposed schedule, Defendants would have had at least five and as much as eight months to produce documents – far more than the 20 or 30 days allowed by statute. In support of further delay, Defendants have simply noted, for example, that the OIP has approximately 60 FOIA requests in litigation. But this Court has recognized that "explaining the[] current docket of FOIA requests" does "not address at all whether [an agency] currently face[s] a volume of requests on a level unanticipated by Congress." *Nat'l Day Laborer*, 236 F. Supp. 3d at 819. Otherwise, Defendants have offered merely the general assertion that they are facing an increase in the number of FOIA requests this year. *See* Joint Letter at 2 (Docket. No. 24). Defendants have not, however, explained how this is anything other than the "predictable agency workload of requests" in the first year of a new Presidential administration. *See* 5 U.S.C. § 552(a)(6)(C)(i).

*****

  For the reasons set forth above, Plaintiffs respectfully request that the Court require (1) Defendants DOJ-CRT, GSA, OMB, and DHS to produce responsive records by December 29, 2017 and Vaughn indexes by January 12, 2018, and (2) Defendants DOJ-OIP and DOJ-OLC to produce responsive records by January 31, 2018 and Vaughn indexes by February 14, 2018. This generous schedule would allow the agencies more than sufficient time to review responsive documents, while reflecting the manifest urgency of providing the public access to the information Plaintiffs have requested.

  We thank the Court for its attention to this matter.

Respectfully submitted,

 /s/ Jeremy M. Creelan

Jeremy M. Creelan

cc: Assistant United States Attorney Casey Kyung-Se Lee