

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

December 4, 2017

By ECF

The Honorable Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *Brennan Center for Justice et al. v. U.S. Dep't of Justice et al.*, 17 Civ. 6335 (KBF)

Dear Judge Forrest:

      This Office represents Defendants in the above-referenced Freedom of Information Act ("FOIA") matter. Pursuant to the Court's instructions during the November 21, 2017, initial conference, we write to advise the Court regarding whether Defendants would be able to implement a "production under a variety of different [court-ordered] protections that would allow . . . escrowed access to the plaintiffs" of potentially exempt agency records that may be responsive to Plaintiffs' FOIA requests. Dkt. No. 29 ("Tr.") at 15:21-23. After careful evaluation of such an arrangement, for reasons detailed below, Defendants have concluded that they are unable to adopt such an approach. Nevertheless, in keeping with the Court's urging of the promptest possible resolution of this matter (including through prioritization of documents that may require less time-intensive review), as well as the Court's directive that Defendants should also continue their ongoing searches for and processing of responsive agency records, *see id.* 16:4-8, Defendants have made extraordinary efforts to further accelerate their anticipated production dates, and will be able to begin producing responsive documents by the end of December 2017. Defendants thus respectfully request that they be permitted to proceed along the timetable described below, which is the fastest and most efficient approach that is reasonably feasible.

      <u>Revised Proposed Timeframes</u>. Defendants now anticipate making their productions as follows: The Department of Justice's ("DOJ's") Civil Rights Division will make an initial production by December 31, 2017, and complete its production by January 26, 2018. The General Services Administration will make an initial production by December 31, 2017, release non-exempt portions of responsive records on a rolling basis, and complete its production by the end of February 2018. The Office of Management and Budget will complete its production by January 31, 2018. The Department of Homeland Security ("DHS") will begin its rolling production of documents by January 31, 2018, and expects to complete its production by the end of July 2018—a completion date that, although four months later than any other defendant's proposed final release date, is necessitated by the extraordinary volume of work and litigation

deadlines that are being experienced by DHS's FOIA personnel.  The DOJ's Office of Information Policy ("DOJ-OIP") will make an interim production by January 31, 2018, and complete its production by March 31, 2018.  The DOJ's Office of Legal Counsel ("DOJ-OLC") will make an interim production by December 31, 2017, and expects to complete its production by the end of March 2018.  Although this Office is available for discussion at any time with Plaintiffs' counsel, we envision that, at least upon the completion of the releases by all agencies and components other than DHS, the parties would confer to attempt to resolve any disputes regarding the sufficiency of those productions and the exemptions asserted.  The parties then could submit a joint briefing schedule to address any unresolved issues, without waiting for the DHS production to be complete.  This would translate to discussions occurring no later than early April 2018, with any necessary briefing to occur on a reasonable schedule soon thereafter.  The parties would then repeat this process as to DHS once DHS has completed its productions.  In the alternative, the first round of discussion and possible briefing could be moved up to cover all agencies whose productions will be complete by the end of February 2018, which would cause any briefing relating to DOJ-OIP and DOJ-OLC to occur during the second round of briefing (if any) that would also cover DHS's releases.

An "Escrowed" Production Would Contravene FOIA.  At the November 21, 2017, initial conference, the Court raised the possibility of providing Plaintiffs' counsel "escrowed access" to agency records under a "court order that protects these [records] from general FOIA production."  Tr. 15:23, 17:12-13.  While such arrangements can be useful in some cases involving large-scale civil discovery, Defendants cannot agree to that approach here, both because Defendants are not willing to make unreviewed, potentially sensitive, currently nonpublic information available to counsel, and because it is contrary to FOIA.

"[T]he FOIA disclosure regime . . . is distinct from civil discovery."  *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009).  Unlike "information disclosed during discovery," which "is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public."  *Chiquita Brands Int'l Inc. v. SEC*, 805 F.3d 289, 300 (D.C. Cir. 2015).  "FOIA does not permit selective disclosure of information only to certain parties."  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997).  Indeed, the Supreme Court has explained that "[t]here is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out [the requester's] theory, or for proscribing its general dissemination."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see also Stonehill*, 558 F.3d at 539 ("Documents released in a FOIA action must be made available to the public as a whole, and, unlike in civil discovery, there is no opportunity to obtain a protective order.") (citations omitted).  FOIA's requirements and processes therefore cannot be squared with an approach that would permit an "escrowed" production pursuant to a protective order.  By definition, such a process would involve releasing or granting access to non-responsive agency records, as well as potentially exempt portions of responsive documents, solely to Plaintiffs' counsel—and expressly withholding those records from the general public—through a protective order limiting wider disclosure.  *See, e.g.*, Tr. 15:18-25, 17:12-16.  The Supreme Court has made clear that FOIA does not permit such an arrangement.

Nor do the particulars of this case (including any purported timing issues Plaintiffs raise) justify use of an "escrowed" production of agency records only to Plaintiffs.  Under FOIA, a

court's jurisdiction is limited to ordering disclosure of "agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). A court lacks the power to require an agency to disclose (or limit public access to) that agency's records except pursuant to FOIA's scheme. *Maricopa*, 108 F.3d at 1087; *see also* 5 U.S.C. § 552(d) (FOIA "does not limit the availability of records to the public[] except as specifically stated in this section"). Thus, "FOIA is 'a scheme of categorical exclusion' that does not permit 'a judicial weighing of the benefits and evils of disclosure on a case-by-case basis.'" *Maricopa*, 108 F.3d at 1089 n.5 (quoting *FBI v. Abramson*, 456 U.S. 615, 631 (1982)).

Beyond these considerations, the defendant agencies and agency components would be harmed even by the proposed limited releases envisioned by the Court, and we are skeptical whether review by Plaintiffs' counsel could be accomplished without compromising significant governmental interests. The use of an "escrowed" preliminary review would entail risk that other requesters could demand access to the same information, and, given the FOIA case law cited above and the general principle that FOIA disclosures cannot be limited to favored recipients, Defendants are not confident that such requests would be precluded by whatever protective measures the Court puts in place. Further, while classified information is not likely to be at issue here, Plaintiffs' requests are designed to seek sensitive, high-level deliberations and legal advice (the stock in trade of DOJ-OLC, among other defendants), and careful privilege review is required to ensure that privileged deliberations and legal advice are protected from disclosure, including to Plaintiffs' counsel. Moreover, Defendants' use of broad search terms in an effort to reliably capture responsive documents has yielded a preliminary set of documents that includes a significant volume of material that is not responsive to Plaintiffs' requests. Finally, the Court's animating concern in proposing the "escrowed" release method was to expedite resolution of this case, and Defendants' accelerated scheduling proposal accomplishes the same objective, without running afoul of Supreme Court precedent and Congress's intent to limit the Court's jurisdiction to determining whether withheld material falls within the ambit of one or more of FOIA's exemptions.

<u>This Court Should Approve Defendants' Proposed Expedited Production Schedule, and Reject Plaintiffs' Proposal</u>. Plaintiffs seek preliminary injunctive relief, *see, e.g.*, Dkt. No. 24 at 1, 3; Dkt. No. 25 at 1, 6; Tr. 4:1-5, 5:5-7, 20:21-21:6, yet fail to meet their burden of demonstrating that they are entitled to such relief. Where, as here, Plaintiffs demand a mandatory, positive act (namely, production by their requested deadlines), "a district court may enter a mandatory preliminary injunction against the government only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a clear or substantial likelihood of success on the merits." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006) (emphasis and quotation marks omitted). In other words, Plaintiffs must demonstrate that their suit "is considerably more likely to succeed than fail." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). "This heightened showing is also required where the issuance of the injunction would provide the movant with substantially all the relief he or she seeks and where the relief could not then be undone, even if the non-moving party later prevails . . . ." *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997).

Plaintiffs have not met these requirements. As demonstrated in Defendants' prior letter, *see* Dkt. No. 26 at 2-3, Plaintiffs fail to show any—let alone a "clear" or "substantial"— likelihood of success on the merits. Briefly restated here, Plaintiffs' reliance on FOIA's 20-day

3

response deadline, Dkt. No. 25 at 3, is misplaced. The 20-day period provided in 5 U.S.C. § 552(a)(6)(A)(i) is not a production deadline; the impact of missing that deadline relates only to the FOIA requestor's ability to bring suit. *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 186, 189 (D.C. Cir. 2013). Nor does a requestor's alleged entitlement to expedited processing impose a production deadline; rather, it directs agencies to process FOIA requests "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); *see also* 28 C.F.R. § 16.5(e)(4). As Defendants explained in detail, *see* Dkt. No. 26 at 1-2, they are subject to a substantial strain in their resources due to the sharp increase in both the number of FOIA requests they have received, as well as the number of FOIA requests currently in litigation. Despite these limitations, in response to Plaintiffs' and the Court's expressed concern about the timing of Defendants' releases, we have developed the fastest reasonably feasible processing and release schedule. That proposed timeframe should be approved, and Plaintiffs' impracticable schedule rejected.

Plaintiffs also fail to demonstrate any irreparable harm that would result if the deadlines they seek are not imposed, and Defendants proceed on the schedule proposed above. "To establish irreparable injury, the plaintiff must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *AVCO Fin. Corp. v. CFTC*, 929 F. Supp. 714, 717 (S.D.N.Y. 1996). "It is not sufficient for a movant to demonstrate merely the possibility of irreparable harm." *Id.* Rather, the movant "must show that it is likely to suffer irreparable harm if equitable relief is denied." Here, at the outset, two agencies expect to complete their productions by Plaintiffs' second proposed deadline, January 31, 2018, and the others will have at least made interim productions by then. Five of the six agencies are expected to complete their productions by March 2018—well ahead of the May 2018 to "end of year 2018" timeframe in which Plaintiffs allege the Voting Commission "is expected to make its final recommendations." Dkt. No. 25 at 4.

Plaintiffs essentially must prove that these minor deviations from Plaintiffs' demanded deadlines would cause irreparable harm. This they cannot do. As previously explained, *see* Dkt. No. 26 at 3, Plaintiffs' professed "general interest in being able to engage in an ongoing public debate using information that it has requested under FOIA is not sufficient to establish that irreparable harm will occur unless the [requestor] receives immediate access to that information." *EPIC v. DOJ*, 15 F. Supp. 3d 32, 46-47 (D.D.C. 2014). Moreover, such an assertion is "fundamentally flawed because it ignores the well-established statutory FOIA process, which permits government agencies to withhold certain requested documents and to engage in subsequent litigation over them, without regard to the resulting production delay." *Id.* at 46. Further, Plaintiffs merely speculate on numerous fronts, both as to their unexplained assertion that they will be unable to meaningfully debate the Commission's work and eventual recommendations without the information they seek through this suit, and also as to their assertions regarding the effects and timing of the Commission's eventual *recommendations— i.e.*, policy proposals that will not constitute any enactment or regulation with the force of law, but that may lead to future regulatory or legislative action, all of which will be subject to vigorous public debate. *Compare* Dkt. No. 25 at 5 (asserting, among other things, that "*[a]ssuming* the Voting Commission's recommendations are issued by mid-2018 as *anticipated*," "Plaintiffs *believe* that the . . . recommendations *may lead* to the imposition of more barriers to the exercise of the right to vote," and that "the consequences are *potentially* irreversible" (emphasis added)), *with EPIC*, 15 F. Supp. 3d at 46 (no irreparable harm regarding potential future legislation where "there is no looming deadline by which Congress must act").

And in any event, as noted above, Plaintiffs will receive completed productions from all Defendants (except DHS) before May 2018—the earliest date by which Plaintiffs claim the Voting Commission may issue its recommendations—with ongoing rolling productions from DHS up through that date, and a completed production from DHS two months after that date. This simply does not constitute irreparable harm.

\* \* \*

For the foregoing reasons, Defendants respectfully request that the Court permit Defendants to proceed under their proposed timetable as specified above.[1]  If the Court nevertheless is inclined to grant Plaintiffs' requested preliminary relief, Defendants respectfully request that they have the opportunity to brief the relevant issues further, including by submission of evidence substantiating the resource-based need for the amount of time we propose and the impracticality of Plaintiffs' proposed schedule.  *See* Tr. 2:16-19 (noting that full briefing could be required if the parties "are at an impasse").  If the Court decides to issue an order granting Plaintiffs' application without additional briefing, Defendants respectfully request that the Court stay that order for 14 days to permit Defendants to consider whether to seek further review.

I thank the Court for its attention to this matter.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney for the
Southern District of New York

By:   */s/ Casey K. Lee*
CASEY K. LEE
Assistant United States Attorney
86 Chambers Street, Third Floor
Tel.: (212) 637-2714
Fax: (212) 637-2686
casey.lee@usdoj.gov

cc:   Counsel for Plaintiffs (by ECF)

---

[1] This Court should also reject Plaintiffs' requests that Defendants produce *Vaughn* indices within two weeks of their demanded production deadlines.  *See* Dkt. No. 25 at 1.  "*Vaughn* indices are typically provided in connection with the filing of a motion for summary judgment regarding the validity of an agency's decision to withhold certain documents."  *EPIC*, 15 F. Supp. 3d at 46 n.9.  "[T]here is no reason to require" any of the Defendants "to create an index and declaration justifying its decision to withhold certain documents until [each] agency has completed processing [Plaintiffs'] FOIA request[s] and the parties have had an opportunity to negotiate regarding any documents that are withheld."  *Id.*  Moreover, the preparation of *Vaughn* indices is a painstaking and time-intensive process, which may well be impossible to accomplish within the brief period proposed by Plaintiffs, particularly given the unknown volume of withheld documents.