

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

December 22, 2017

By ECF

The Honorable Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *Brennan Center for Justice et al. v. U.S. Dep't of Justice et al.*, 17 Civ. 6335 (KBF)

Dear Judge Forrest:

      This Office represents Defendants in the above-referenced Freedom of Information Act ("FOIA") matter. We submit this reply to Plaintiffs' December 7, 2017, response letter regarding Defendants' proposed timeframes for making their FOIA productions in this case. *See* Dkt. No. 33; *see also* Dkt. Nos. 24, 25. As previously noted, Defendants have made extraordinary efforts to further accelerate their production timeframes, such that the Department of Justice's ("DOJ's") Office of Legal Counsel ("DOJ-OLC") and Office of Information Policy ("DOJ-OIP") will make initial productions this December and January, respectively, and complete their productions by the end of March 2018, while the Department of Homeland Security ("DHS") will begin its rolling production in January 2018, and complete its production by July 2018. *See* Dkt. No. 31 at 1-2. The declarations submitted with this letter make clear that these proposed timeframes are eminently reasonable, and that any earlier production would be infeasible.

      Over five weeks have passed since Plaintiffs first sought formal briefing on their request for preliminary relief in the form of an infeasible production deadline. *See* Dkt. No. 24 at 1. Since then, Plaintiffs have foregone formal briefing and accepted the production schedules for three of the defendant agencies,[1] but they continue to quibble with the proposed production schedules for DOJ-OLC, DOJ-OIP, and DHS. *See* Dkt. No. 33 at 1-2. Despite having taken three bites at the apple, *see* Dkt. Nos. 24, 25, 33—with yet another to follow, *see* Dkt. Nos. 35, 36—Plaintiffs still fail to fulfill the exacting burden for the grant of mandatory preliminary relief against government agencies in this case, namely demonstrating both irreparable harm and a clear or substantial likelihood of success on the merits. *See Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006). Plaintiffs' demand for a February 28, 2018, final production deadline for DOJ-OLC, DOJ-OIP, and DHS should therefore be denied.

---

[1] Plaintiffs have agreed to the proposed production schedules for the DOJ's Civil Rights Division, the General Services Administration, and the Office of Management and Budget. *See* Dkt. No. 33 at 1.

<u>Plaintiffs Still Fail to Demonstrate Irreparable Harm</u>. "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). Plaintiffs bear the burden of establishing irreparable harm by demonstrating "an injury that is neither remote nor speculative, but actual and imminent." *Id*. "[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991). Defendants have already shown that Plaintiffs cannot meet that burden here. *See* Dkt. No. 26 at 3; Dkt. No. 31 at 4-5. Plaintiffs cannot deny that by May 2018—the earliest date by which Plaintiffs claim the Voting Commission may issue its non-binding recommendations, *see* Dkt. No. 25 at 4—Plaintiffs will have received complete productions, minus a mere two or three months' worth of DHS's rolling productions. Further, five of the six agencies will have completed their productions by March 2018, and the sixth, DHS, will have already made multiple rolling productions. As a result, to obtain their requested relief, Plaintiffs must demonstrate a near impossibility—that they would suffer an actual, imminent injury that would occur under the above-described circumstances, but that will not occur under their requested February 28, 2018, deadline. Plaintiffs' latest arguments fail to demonstrate any such injury in this case.

To start, Plaintiffs now assert for the first time—without any support—that "February 28 represents the latest production deadline that would not jeopardize . . . timely dissemination of information to the public regarding the [Voting Commission] and its activities." Dkt. No. 33 at 2. This position is readily dismissed. Plaintiffs, who launched their bid for preliminary relief by insisting that Defendants could review, analyze, and process *thousands* of documents in *two months or less*, *see* Dkt. No. 24 at 1-3, Dkt. No. 25 at 1, now remarkably contend that they need *at least* two months (*i.e.*, end of February 2018 to May 2018 or later) to perform the far less labor-intensive task of disseminating information from Defendants' final productions. Plaintiffs tellingly decline to state (let alone show) that production after February 28 would in fact prevent timely dissemination of such information; instead, they merely speculate that Defendants' production timetable might "jeopardize" that disclosure. And even assuming that the Voting Commission issues its recommendations as early as May 2018, Plaintiffs nowhere attempt to explain why they would need at least two months to publicize information from Defendants' productions. To the contrary, not only will Plaintiffs be able to start disseminating information from Defendants' productions beginning this month, they will also be in a position to disclose information from five of the six agencies' completed productions, and DHS's partial productions, by March 2018. *See Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015) (no irreparable harm where, among other things, some of the records sought by plaintiff were released, and plaintiff "has not been entirely stymied in its ability to review and" inform the public "of the records that are the subject of its FOIA requests").[2] Moreover, a plaintiff fails to demonstrate irreparable harm—even if it has a "significant interest in receiving

---

[2] Plaintiffs' irreparable harm arguments fail for still other reasons. Defendants previously noted that Plaintiffs' "general interest in being able to engage in an ongoing public debate using information that it has requested under FOIA is not sufficient to establish that irreparable harm will occur unless the movant receives immediate access to that information." Dkt. No. 31 at 4 (quoting *EPIC v. DOJ*, 15 F. Supp. 3d 32, 46-47 (D.D.C. 2014)); *see also* Dkt. No. 26 at 3 (same). That is "particularly" true "where the media ha[s] already extensively covered the event." *EPIC*, 15 F. Supp. 3d at 47. In this case, Plaintiffs have alleged in their amended complaint that "[t]he [Voting] Commission and the issue of voter fraud have been the focus of widespread and *extensive . . . media coverage*." Dkt. No. 12 ¶ 23 (emphasis added).

timely access to documents with potential bearing on a matter of obvious public interest"—where, as here, an agency is already working to search for and process records responsive to a plaintiff's requests, and "the plaintiff's requested injunction would compel production of the sought-after materials, at most, only marginally sooner than the agency has indicated it intends to complete its processing of the plaintiff's request without such compulsion." *Daily Caller*, 152 F. Supp. 3d at 13.  That is indisputably the case here.

Plaintiffs then take a different tack, insisting that "Defendants must complete their productions no later than the end of February 2018 to allow Plaintiffs sufficient time to analyze and, if necessary, bring potential challenges to the sufficiency of those productions."  Dkt. No. 33 at 3.  But again, as Defendants have already pointed out, *see* Dkt. No. 31 at 4, this argument is "fundamentally flawed because it ignores the well-established statutory FOIA process, which permits government agencies to withhold certain requested documents and to engage in subsequent litigation over them, without regard to the resulting production delay." *EPIC v. DOJ*, 15 F. Supp. 3d 32, 46 (D.D.C. 2014).

Plaintiffs close by citing case law purportedly "grant[ing] preliminary injunctions mandating production by a date certain" in circumstances similar to those in this case.  *See* Dkt. No. 33 at 4 (citing Dkt. No. 25 at 5).  None support the grant of the preliminary relief Plaintiffs demand here.  At the outset, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 250 (D.D.C. 2005), and *NDLON v. U.S. Immigration and Customs Enforcement*, 236 F. Supp. 3d 810, 819 (S.D.N.Y. 2017), dealt with motions for summary judgment, not preliminary injunctions.  Notably, in *Gonzales*, the "set date" (Dkt. No. 25 at 6) the court imposed in that case—so that defendants would "expedite processing plaintiff's FOIA requests" and produce the requested records "as soon as practicable"—was "*two years* from the date on which the complaint was initially filed."  404 F. Supp. 2d at 260 (emphasis added).  And in *NDLON*, the court, "mindful of the strain that defendants' FOIA responsibilities may pose," expressly "decline[d] to adopt plaintiffs' proposed predictive dates, which defendants argue[d] would be nearly impossible to comply with," and adopted "a reasonable time frame for the government to respond to plaintiffs' request."  236 F. Supp. 3d at 819-20.  Adopting Defendants' proposed timeframes here thus would be entirely consistent with these decisions, while adopting Plaintiffs' unworkable proposal would not.

*Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006), *Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976), and *EFF v. Office of the Director of National Intelligence*, 542 F. Supp. 2d 1181 (N.D. Cal. 2008), are also readily distinguished.  As other courts have noted, in *Washington Post*, the court found "irreparable harm where the defendant agency refused entirely to process the plaintiff's request." *Daily Caller*, 152 F. Supp. 3d at 14 (citing *Washington Post*, 459 F. Supp. 2d at 74-75).  That situation is not present here; rather, Defendants are actively working to process Plaintiffs' FOIA requests and make their productions on a highly accelerated timetable.  *Cleaver* in turn, involved an imminent deadline, where the plaintiff sought to rely on requested records for his criminal trial, scheduled to begin a month from the court's decision.  *See EPIC*, 15 F. Supp. 3d at 42 n.5; *Daily Caller*, 152 F. Supp. 3d at 14.  By contrast, even under the earliest date by which Plaintiffs claim the Voting Commission will issue its non-binding recommendations, Defendants will have completed nearly all of their productions.  In *EFF*, the Court's overarching concern was that the requested documents would "be rendered useless" if "produced after Congress amends the law."  542 F.

Supp. 2d at 1186.  Again, in this instance, Defendants' productions will be nearly complete by the earliest time by which the Voting Commission will supposedly issue its recommendations. Further, any risk that Defendants' productions will be completed after the enactment of any law is entirely speculative, since the Voting Commission's forthcoming recommendations will not themselves have the force of law.  See Exec. Order No. 13,799, § 3, 82 Fed. Reg. 22389 (May 11, 2017) ("The Commission shall be solely advisory").  Indeed, Plaintiffs continue to offer mere speculation on this front. See Dkt. No. 33 at 3 (the "anticipated ramifications" of the Voting Commission's work "necessitate a timely production"); see also Dkt. No. 25 at 5; Dkt. No. 31 at 4.  Plaintiffs therefore fail to show that they will suffer irreparable harm if Defendants' productions are not complete by February 28, 2018.

      Plaintiffs' Misreading of Relevant Case Law Cannot Establish a Likelihood of Success on the Merits.  Plaintiffs' merits arguments are premised on the incorrect assertion that FOIA's expedited processing provision serves as a basis for demanding a production deadline within a specific number of days.  See Dkt. No. 33 at 2-3.  That is simply false.  FOIA "does not assign any particular time frame to release . . . the records sought." Landmark Legal Found. v. EPA, 910 F. Supp. 2d 270, 275 (D.D.C. 2012).  Rather, as explained in the legislative history to the FOIA amendments that inserted the expedited processing provision, "[n]o specific number of days for compliance is imposed by the bill, since, depending on the complexity of the request, the time needed for compliance may vary." S. Rep. No. 104-272, at 17 (1996). "The goal is not to get the request . . . processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur." Id.  Accordingly, FOIA only requires that agencies process FOIA requests "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); see also 28 C.F.R. § 16.5(e)(4).

      What is "practicable"—and thus what FOIA requires—depends on the circumstances surrounding Defendants' efforts to respond to Plaintiffs' FOIA requests.  Here, as previously shown, Dkt. No. 26 at 1-2, and as the accompanying declarations conclusively establish, DOJ-OLC, DOJ-OIP, and DHS are processing Plaintiffs' FOIA as soon as possible, let alone practicable.  Among other things, the three at-issue agencies here have been inundated with FOIA requests.  DOJ-OLC received 284 FOIA requests in Fiscal Year 2017, which is "more than two and a half times the average number of requests received per year over the previous five years," and more than double the FOIA requests received in the prior fiscal year.  Declaration of Paul P. Colborn ("Colborn Decl.") ¶¶ 11-12, Dec. 21, 2017.  Similarly, DOJ-OIP "received more than 2,800 FOIA requests in Fiscal Year 2017," "has received 574 requests in Fiscal Year 2018," and "is currently on pace to have at least four times more" FOIA requests in its expedited processing track than it did in Fiscal Year 2016.  Declaration of Vanessa R. Brinkmann ("Brinkmann Decl.") ¶¶ 14, 24, Dec. 20, 2017.  DHS, in turn, received 1,348 FOIA requests in Fiscal Year 2017, more than double the FOIA requests received in the prior fiscal year. Declaration of James V.M.L. Holzer ("Holzer Decl.") ¶ 11, Dec. 21, 2017.[3]  Compare Daily Caller, 152 F. Supp. 3d at 12 ("dramatic," "nearly a 20% year-over-year increase" in FOIA requests was outside the "ambit of a 'predictable agency workload'").  On top of this dramatic increase in FOIA requests, these agencies are also contending with sharp increases in FOIA-related litigation.  DOJ-OLC is currently involved in "more than 30 active lawsuits seeking OLC

---

[3] Separately, DHS is also currently providing FOIA processing assistance to one of its components, which "received over 20,000 FOIA requests each in FY16 and FY17." Holzer Decl. ¶ 7.

records," with numerous court-ordered deadlines between now and March 2018. Colborn Decl. ¶¶ 22-23. DOJ-OIP "is currently engaged in over sixty-five ongoing FOIA litigation matters, many of which involve document production schedules." Brinkmann Decl. ¶ 14. DHS has "experienced an increase of 65% in FOIA-related litigation" since Fiscal Year 2016 and is "currently involved in 56 active lawsuits." Holzer Decl. ¶ 13. *Compare Daily Caller*, 152 F. Supp. 3d at 12 (noting as an exceptional circumstance that "the agency is presently engaged in extensive litigation, involving nearly three dozen separate cases"). Notwithstanding this significant strain on their limited resources, these agencies have laudably provided accelerated production timeframes that obviate any reasonable timing concerns in this case. The purported need for an even earlier deadline of February 28, 2018, is both unfounded and infeasible.

In taking a contrary position, Plaintiffs again misread language from a D.C. Circuit opinion to contend that FOIA imposes a "statutory imperative to make records 'promptly available,'" and that "promptly available 'typically would mean within days or a few weeks . . . not months or years.'" Dkt. No. 33 at 2 (quoting *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013)) (ellipsis in Dkt. No. 33); *see also* Dkt. No. 25 at 3 (same selective quotation). As Defendants already pointed out (Dkt. No. 26 at 2), the full quoted language reads: "Under [FOIA], a distinction exists between a 'determination' and subsequent production. As to actual *production*, FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks *of a 'determination,'* not months or years." *CREW*, 711 F.3d at 188 (citation omitted, emphasis added). This statutory distinction between "determination" and "production"—a distinction Plaintiffs tellingly gloss over—lays bare the fatal flaws in Plaintiffs' stance.

Under FOIA, an agency must first make a "determination" on "whether to comply with a FOIA request." *CREW*, 711 F.3d at 186. A "determination" is "more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future." *Id.* at 188. Rather, a "determination" requires an agency to "at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse," *id.*—in other words, precisely the tasks Defendants are in the midst of performing with respect to Plaintiffs' FOIA requests. The "promptly available" requirement for *production* of documents thus is only triggered after this "determination" process is complete, and (in the D.C. Circuit's words), would typically mean production "within days or a few weeks" of that determination. *Id.* ("To be clear, a 'determination' does not require actual *production* of the records to the requester at the exact same time that the 'determination' is communicated to the requester."). Consequently, FOIA's "promptly available" language offers no support for Plaintiffs' assertion that Defendants must complete their productions by a date certain in this case. Quite the opposite: Defendants are still in the midst of making their FOIA "determinations," and the "promptly available" requirement only compels Defendants to actually produce documents in an expedient manner once their determinations are complete. *See EPIC*, 15 F. Supp. 3d at 41-42 (describing two-step agency response to a FOIA request).

Plaintiffs then accuse Defendants of "misconstru[ing] Plaintiffs' point" regarding FOIA's 20-day statutory deadline, Dkt. No. 33 at 3, only to recommit their prior error (Dkt. No. 25 at 3) and argue yet again that this deadline somehow "demonstrates the need for this Court to

5

intervene and order prompt production," Dkt. No. 33 at 3.  This is simply not so.  As previously demonstrated, *see* Dkt. No. 26 at 2-3; Dkt. No. 31 at 3-4, the 20-day period provided in 5 U.S.C. § 552(a)(6)(A)(i), which can be extended by 10 days, *see id.* § 552(a)(1)(6)(B)(i), is not a production deadline.  *See CREW*, 711 F.3d at 189-90.  Rather, "the impact of blowing the 20-day deadline relates *only to the requester's ability to get into court*."  *EPIC*, 15 F. Supp. 3d at 41.  And once in court, "the agency 'may continue to process the request,' but will do so under the court's supervision."  *Id.* at 42 (quoting *CREW*, 711 F.3d at 189).  At that juncture, the Court's role is to "ensur[e] that the agency continues to exercise due diligence in processing the request," *CREW*, 711 F.3d at 189, not impose an infeasible production schedule.  As their ongoing efforts and progress make clear, Defendants have been exercising maximum diligence in processing Plaintiffs' requests.  Plaintiffs therefore cannot establish any clear or substantial likelihood of success on the merits.

*   *   *

For these reasons, and the reasons set forth in their prior letters, *see* ECF 26, 31, Defendants respectfully request that the Court permit DOJ-OLC, DOJ-OIP, and DHS to proceed under their proposed timetable.  In the event that the Court elects to issue an order granting Plaintiffs' requested preliminary relief, Defendants respectfully further request that the Court stay that order for 14 days to permit Defendants to consider whether to seek further review.

We thank the Court for its attention to this matter.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney for the
Southern District of New York

By: */s/ Casey K. Lee*
CASEY K. LEE
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, NY 10007
Tel.: (212) 637-2714
Fax: (212) 637-2686
casey.lee@usdoj.gov

cc:    Counsel for Plaintiffs (by ECF)