Case 1:17-cv-06335-KBF   Document 41   Filed 01/12/18   Page 1 of 4



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

January 12, 2018

By ECF

The Honorable Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *Brennan Center for Justice et al. v. U.S. Dep't of Justice et al.*, 17 Civ. 6335 (KBF)

Dear Judge Forrest:

      This Office represents Defendants in the above-referenced Freedom of Information Act ("FOIA") matter. We submit this response to Plaintiffs' January 10, 2018, letter further trimming their pending preliminary injunction motion. *See* Dkt. No. 40. Throughout what has become a nearly *two-month* long saga, Plaintiffs staked their demand for an infeasible production schedule on the supposition that the Presidential Advisory Commission on Election Integrity ("Commission") might issue a non-binding report as early as May 2018. *See, e.g.*, Dkt. No. 25 at 4; Dkt. No. 33 at 3; Dkt. No. 38 at 2. But now, the Commission has been dissolved, thereby eliminating any possible issuance of any report by that body—let alone in May of this year. *See* Dkt. No. 39. Notwithstanding what they acknowledge to be changed circumstances, *see* Dkt. No. 40 at 2, Plaintiffs maintain that the Court should nevertheless impose on the Department of Homeland Security ("DHS") an unreasonable February 28, 2018 production deadline.[1] Plaintiffs' application for such relief should be denied. DHS, despite experiencing extraordinary burdens in its FOIA unit, will begin its rolling production later this month, and complete that production by midsummer in July 2018. *See* Dkt. No. 31 at 1-2. That timeframe remains eminently reasonable; Plaintiffs' contentions to the contrary are baseless.

      Once again, Plaintiffs fail to meet the exacting requirements for the grant of mandatory preliminary relief against government agencies: both irreparable harm and a clear or substantial likelihood of success on the merits. *See Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006). The crux of Plaintiffs' now-truncated preliminary injunction motion is their view that, despite the Commission's dissolution, "[t]he fundamental facts and legal analysis remain unchanged," at least with respect to DHS. *See* Dkt. No. 40 at 2. As a preliminary matter, Defendants have established that Plaintiffs were not entitled to their requested relief, even during the Commission's existence. *See* Dkt. Nos. 26, 31, 37. The recent change in circumstances

---

[1] Plaintiffs have now agreed to the proposed production schedules for the General Services Administration, the Office of Management and Budget, and the Department of Justice's Civil Rights Division, Office of Legal Counsel, and Office of Information Policy. *See* Dkt. No. 33 at 1; Dkt. No. 40 at 2-3.

eliminates any possible claim of irreparable harm. The White House Office has confirmed that "[t]he Commission did not create any preliminary findings," and that "no Commission records or data will be transferred to DHS or another agency," except to the National Archives and Records Administration ("NARA"), "if required, in accordance with federal law."[2] In addition, the state voter data provided to the former Commission "has never been transferred to, or accessed or utilized by . . . []DHS[] or any other agency," and "will not be transferred to, or accessed or utilized by, DHS or any other agency, except to" NARA. Second Herndon Decl. ¶ 4. "No Commission member was provided access to the state voter data [provided to the Commission] prior to the Commission's termination[,] and none has access now." *Id.* ¶ 3. And "[p]ending resolution of outstanding litigation involving the Commission . . . the White House intends to destroy all state voter data." *Id.* ¶ 4. Simply put, the former Commission's work has decisively come to an end.

Plaintiffs nevertheless speculate, based on cherry-picked quotations from recent news articles, that there is "compelling reason for concern that DHS will pick up where the Commission left off and use the information and approach that are in [among other persons] Mr. Kobach's mind and possession." Dkt. No. 40 at 2. Such guesswork and "concern" do not demonstrate irreparable harm to Plaintiffs. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (Plaintiffs bear burden of establishing "an injury that is neither remote nor speculative, but actual and imminent"); *see also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991) ("a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction"). To start, a selective quotation of a handful of press articles cannot make out a sufficient evidentiary basis for preliminary relief, *see, e.g.*, *Mammar v. Bush*, 407 F. Supp. 2d 77, 78 (D.D.C. 2005) (reliance on "information and belief" and news reports "fall[s] well short of anything that would justify the issuance of a preliminary injunction"). But even taking Secretary Kobach's press statements as true for argument's sake (of which there is no evidence), he will be merely an "outside"[3] and "informal"[4] adviser to DHS, and he "expects the bulk"—in other words, not all—"of the [supposed] DHS investigation to be done by midsummer."[5] By then, Plaintiffs will have received completed productions from all Defendants, including DHS.[6] Defendants have already explained in fulsome detail why Plaintiffs could not prove irreparable harm to themselves based on a supposed May 2018 arrival date for the former Commission's non-binding report. *See* Dkt. Nos. 26, 31, 37. The same is all the more true here where, even taking Plaintiffs' cited press articles as fact, DHS will likely complete its production *before* any purported DHS investigation is complete. Plaintiffs thus fail once more to demonstrate the requisite irreparable harm.

---

[2] Second Declaration of Charles C. Herndon ¶ 5, *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-2361 (CKK) (D.D.C. Jan. 9, 2018), ECF No. 39-2 [hereinafter "Second Herndon Decl."].

[3] Robert Siegel, "Kris Kobach On What Led To The Disbandment of Controversial Election Commission," NPR (Jan. 4, 2018), https://www.npr.org/2018/01/04/575774092/kris-kobach-on-what-led-to-the-disbandment-of-controversial-election-commission.

[4] Michael Tackett and Michael Wines, "Trump Disbands Commission on Voter Fraud," N.Y. Times (Jan. 3, 2018), https://www.nytimes.com/2018/01/03/us/politics/trump-voter-fraud-commission.html.

[5] Jill Colvin and John Hanna, "Trump disbands voter fraud commission amid fights, lawsuits," N.Y. Times (Jan. 4, 2018), https://www.nytimes.com/aponline/2018/01/04/us/politics/ap-us-trump-election-commission.html.

[6] What's more, none of Plaintiffs' cited press articles make any mention of DHS issuing "a report and recommendations," as Plaintiffs claim. *See* Dkt. No. 40 at 2.

Plaintiffs then commit a single sentence to the topic of likelihood of success on the merits, claiming that they should prevail due to what they characterize as Secretary Kobach's efforts to thwart "the government's public disclosure responsibilities." Dkt. No. 40 at 2. Plaintiffs continue to press the baseless notion that the alleged importance of their FOIA request suffices to permit Plaintiffs to jump the queue and require DHS to follow an accelerated production deadline. Courts have properly rejected that exact approach. "Given that there are only so many [agency] staffers to process existing requests, allowing [Plaintiffs] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs." *EPIC v. Dep't of Justice*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014); *see also id.* ("entry of a preliminary injunction expediting a FOIA request over other pending requests would severely jeopardize the public's interest in an orderly, fair, and efficient administration of FOIA" (quotation marks and brackets omitted)); *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 15 (D.D.C. 2015) (Plaintiffs' "bald reliance on [their] own interest in obtaining the sought-after records and the more generalized public interest in the disclosure of those records does little to distinguish . . . [P]laintiff[s'] requests from every other time-sensitive FOIA request"). Indeed, this Court has recognized that such an approach "cause[s] a lot of breakage." Dkt. No. 29 at 21:9.

Rather, the real question is whether DHS is meeting its FOIA obligation to process Plaintiffs' FOIA requests "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); *see also* 28 C.F.R. § 16.5(e)(4). As previously demonstrated, DHS is processing Plaintiffs' requests with utmost due diligence. *See* Dkt. No. 37 at 4-5. To recap, DHS received 1,348 FOIA requests in Fiscal Year 2017, more than double the FOIA requests received in the prior fiscal year, and is also currently providing FOIA processing assistance to one of its components, which received over 20,000 FOIA requests each year in FY16 and FY17. *See id.* at 4 & n.3. DHS received 188 FOIA requests relating to Presidential executive orders prior to Plaintiffs' May 2017 FOIA request. Dkt. No. 37-3 ¶ 12. In addition, DHS has been met with a 65% increase in FOIA-related litigation since Fiscal Year 2016 and is currently involved in 56 active lawsuits. Dkt. No. 37 at 5. Notwithstanding this significant strain on an approximately 15-member staff, *see* Dkt. No. 37-3 ¶ 9, DHS will begin its rolling production this month, and complete that production by "midsummer" in July of this year. Plaintiffs' demand for an even earlier deadline of February 28, 2018, is simply infeasible, *see* Dkt. No. 37-3 ¶¶ 17-18, and would (among other things) possibly "strain the resources of DHS . . . to a degree that DHS would be in jeopardy of being in contempt of orders from several courts," *id.* ¶ 19.

For these reasons, and the reasons set forth in their prior letters, *see* ECF 26, 31, 37, Defendants respectfully request that the Court permit DHS to proceed under Defendants' proposed timetable. In the event that the Court elects to issue an order granting Plaintiffs' modified request for preliminary relief, Defendants respectfully further request that the Court stay that order for 14 days to permit Defendants to consider whether to seek further review.

We thank the Court for its consideration of this matter.

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney for the
                                    Southern District of New York

By:    */s/ Casey K. Lee*
        CASEY K. LEE
        Assistant United States Attorney
        86 Chambers Street, Third Floor
        New York, NY 10007
        Tel.: (212) 637-2714
        Fax: (212) 637-2686
        casey.lee@usdoj.gov

cc:      Counsel for Plaintiffs (by ECF)