UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                          :
BRENNAN CENTER FOR JUSTICE AT NEW          :
YORK UNIVERSITY SCHOOL OF LAW; THE         :     **OPINION AND ORDER**
PROTECT DEMOCRACY PROJECT, INC.            :     **GRANTING PARTIAL**
                                                          :     **SUMMARY JUDGMENT**
                                    Plaintiffs,         :
       -against-                                       :     17 Civ. 6335 (AKH)
                                                          :
U.S. DEPARTMENT OF JUSTICE; U.S.            :
DEPARTMENT OF HOMELAND SECURITY;    :
U.S. GENERAL SERVICES                            :
ADMINISTRATION; OFFICE OF                     :
MANAGEMENT AND BUDGET; U.S. SOCIAL  :
SECURITY ADMINISTRATION,                      :
                                                          :
                                    Defendants.        :
                                                          :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/19

ALVIN K. HELLERSTEIN, U.S.D.J.:

       I write to resolve two disputes in this Freedom of Information Act ("FOIA") case.

The matter arises in the context of an investigation of alleged voter fraud, commissioned and

then aborted by the President and, plaintiffs allege, continued in other ways by other agencies.

       On May 11, 2017, President Donald J. Trump established the Presidential

Advisory Commission on Election Integrity ("Commission") to study and report on voter fraud:

"vulnerabilities in voting systems and practices used for Federal elections that could lead to

improper voter registrations and improper voting, including fraudulent voter registrations and

fraudulent voting." Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017).[1] On

_____

[1] Vice President Mike Pence chaired a fifteen-member Commission. Its vice chair was Kansas Secretary of State
Kris Kobach. The Commission included Indiana Secretary of State Connie Lawson, New Hampshire Secretary of
State William Gardner, Maine Secretary of State Matthew Dunlap, former Ohio Secretary of State J. Kenneth

January 3, 2018, just seven months later, President Trump disbanded the commission. Exec. Order No. 13,820, 83 Fed. Reg. 13,820 (January 3, 2018). In a statement issued that day, the Press Secretary announced that President Trump chose to dissolve the Commission "[r]ather than engage in endless legal battles at taxpayer expense." The White House, Office of the Press Secretary, *Statement on the Presidential Advisory Commission on Election Integrity* (Jan. 3, 2018), https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity. According to the statement, President Trump "asked the Department of Homeland Security to review its initial findings and determine next courses of action." *Id.*

Plaintiffs Brennan Center for Justice at New York University School of Law and the Protect Democracy Project, Inc. (collectively, "Plaintiffs") made demand under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the documents of the Commission's work, filed this suit, and subsequently moved for an order to compel the U.S Department of Justice ("DOJ"), U.S. Department of Homeland Security ("DHS"), U.S. General Services Administration ("GSA"), U.S. Office of Management and Budget ("OMB"), and U.S. Social Security Administration ("SSA") (collectively "Defendants" or "Government") to produce the documents responsive to Plaintiffs' FOIA requests.[2] Two issues remain for my determination: 1)

---

Blackwell, and Election Assistance Commission Commissioner Christy McCormick. The White House, Office of the Press Secretary, *President Announces Formation of Bipartisan Presidential Commission on Election Integrity* (May 11, 2017), https://www.whitehouse.gov/briefings-statements/president-announces-formation-bipartisan-presidential-commission-election-integrity/; Wedoff Decl., ECF 77-2, at 2.

[2] Plaintiffs have not sought records directly from Commission members or the Commission, which Plaintiffs concede is not an "agency" subject to FOIA. 5 U.S.C. § 552(f)(1); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980); *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009); *see* Tr., ECF 92, at 22.

whether search terms adopted by DHS and OMB, narrower than those adopted by the DOJ, SSA, and GSA,[3] are reasonable and appropriate or too narrow to carry out a reasonable and responsive search; and 2) whether Defendants should be required to search the private email accounts of Acting Assistant Attorney General John Gore ("Gore") and DOJ attorney Maureen Riordan ("Riordan"), and if "potentially responsive agency records [exist] outside of a Department records system, such as in a personal email account." Gore and Riordan, although not Commission members, received emails from Commission members, concerning Commission business, in their personal email accounts. Gore also sent emails concerning Commission business to a Commission member at her personal email address.

Both sides move for summary judgment. I rule for Plaintiffs on both issues.

### Factual Background

1. <u>The Presidential Advisory Commission on Election Integrity</u>

Plaintiffs allege that the Commission, established by President Trump to "promote fair and honest Federal elections" by detecting voter fraud, was really intended to erect legal barriers to voting by eligible citizens. Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017). Plaintiffs believe that the production of relevant documents may enable them to substantiate their claims. On June 28, 2017, Kris Kobach, Vice Chair of the Commission, sent letters to state election officials seeking publicly-available voter roll data, including names,

---

[3] Plaintiffs represent in its reply brief that they are discontinuing their earlier challenge to the DOJ-OIP, DOJ-OLC, GSA, and SSA search terms based on the Government's subsequent disclosures. Reply at 9. At oral argument, Plaintiffs further represented that, based on additional disclosures, it was withdrawing its requests for supplemental search terms for DOJ-CRT.

addresses, political party affiliation, partial social security numbers, voter history, active/inactive status, felony status, registration status in another state, military status, and overseas citizen information. Supp. Compl. ¶ 17. The effect of these inquires and other Commission activity, Plaintiffs allege, was to chill registrations of voters and to increase cancellations of voter registrations. Allegedly, nearly 4,000 registrations were cancelled in Colorado and 1,715 in Florida, more than double the cancellations in prior years. Supp. Compl. 19.

President Trump formally dissolved the Commission in January 2018. However, Plaintiffs allege, DHS has continued its work. Plaintiffs allege that Immigration and Customs Enforcement ("ICE"), an agency of DHS, continued the work of the Commission, evidenced by a subpoena issued by the U.S. Attorney of the Eastern District of North Carolina on August 31, 2018 to the State Board of Elections and Ethics Enforcement and forty-four counties in North Carolina, seeking voter records and ballots. Pl. Br. at 5–6. As of March 2019, an investigation of election fraud remained active in North Carolina.

2. Plaintiffs' FOIA Requests

In May 2017 and July 2017, Plaintiffs sent eight FOIA requests to the U.S. General Services Administration ("GSA"), Department of Homeland Security ("DHS"), Office of Management and Budget ("OMB"), and several sections of the Department of Justice ("DOJ")—its Office of Information Policy ("OIP"), Civil Rights Division ("CRT"), and Office of Legal Counsel ("OLC")—seeking documents and communications related to the Commission's formation, goals, and activities. See ECF 77-2 to 77-9. After filing this suit, Plaintiffs filed three additional FOIA requests on October 18 and 19, 2017, to DOJ-OIP, SSA, and DHS. See ECF 77-10 to 77-12 (seeking information on the Commission's use of SSA resources in carrying out its activities, DOJ emails exchanged between the Heritage Foundation

4

and Commission members, and documents from DHS related to the Commission's termination and transfer of operations to DHS).

Each agency identified the methods and terms for its searches. *See, e.g.*, Vanessa R. Brinkmann Decl., ECF 82. DOJ-OIP searched: "Election Integrity," "voter fraud," "voting system," the names of members of the Commission, "citizenship status," "voter registration list," "voter file data," "voter roll data," ("detail" AND "commission"), ("assignment" AND "commission"); other agencies used these or similar terms. OMB, in contrast, searched only "PACEI," or "election commission" or "election integrity commission." Heather Walsh Decl. ECF 78, at 6. DHS used even narrower terms: "Presidential Advisory Commission on Election Integrity" or "Election Commission" or "Commission" and "Voter Fraud." James Holzer Decl., ECF 88, at 6.

Another issue relates to private email accounts of agency personnel. One agency, DOJ-OLC, asked custodians to report if "potentially responsive agency records outside of a Department records system, such as in a personal email account," existed; the agency responded in the negative. ECF 83 ¶ 18. GSA reported that Assistant General Counsel Duane Smith had "contacted the GSA employees who were involved in providing administrative support services and they confirmed that they had not used any private emails to conduct GSA business." Lewis Decl., ECF 85 ¶ 11. In contrast, SSA made no such inquiry; it argues that, since SSA policy requires the use of agency accounts to conduct agency business, there was no point to ask if private email accounts were used. Chyn Decl., ECF 86 ¶ 11. Similarly, the DOJ-CRT information officer reported that although personal email accounts were used, the emails were forwarded to the official DOJ account and, therefore, there was no need to search personal email accounts." Cooper Decl., ECF 84 ¶ 14.

5

Plaintiffs cite use by at least two non-Commission agency employees of personal email accounts to send and receive emails relating to Commission matters, and argue that other records must exist outside the official records system. Acting Assistant Attorney General John Gore, for example, used his personal Gmail account to correspond about allegations of illegal voting with Chris Cleveland, a partisan political activist on voter fraud issues. Wedoff Decl., ECF 77-22, 77-23; Pl. Br., ECF 76, at 13. Gore later forwarded variations of his email thread with Cleveland to Commission member Christy McCormick, also via her personal AOL address, on July 5, 2017 and September 5, 2017. Wedoff Decl., ECF 77-22, 77-23. Eighty-four days after his first private email, on September 27, 2017, Gore forwarded both emails to his official DOJ account. *Id.*

In a second instance, Commission member J. Christian Adams sent at least two emails on voting integrity to DOJ attorney Maureen Riordan's personal Comcast address. Wedoff Decl., ECF 77-24, 77-25. Within a day of receiving the emails, Riordan forwarded them to her official DOJ account. *Id.*

**Legal Standards**

A court may "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request. *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013); *see also* § 552(a)(6)(C). "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *see also Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 263, 269 (D.D.C. 2014); *Nat. Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 42 (D.D.C. 2002).

"Summary judgment is the usual mechanism for resolving a FOIA dispute." *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 43 (S.D.N.Y. 2018). "[O]n a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 144 (D.D.C. 2015) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). The "search for records does not have to be perfect, only reasonable, and the failure to return all responsive documents is not necessarily inconsistent therewith: an agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010) (internal quotation marks removed). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search . . . are sufficient to sustain the agency's burden. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "These declarations are 'accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Landmark Legal Found. v. E.P.A.*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013).

## Discussion

Defendants argue, first, that their responses to Plaintiffs' search requests were adequate, and that the selection of search terms is the responsibility of the agencies, not the Plaintiff; and, second, that custodians enjoy a presumption of compliance with recordkeeping

regulations, without requiring them to search private email accounts to comply with a FOIA request. Plaintiffs argue that the search terms used by the two resisting agencies, DHS and OMB, plainly were inadequate and inconsistently narrower than the terms used by other agencies, and that custodians cannot turn a blind eye when private email accounts are used.

## A.    The Appropriateness of the Search Terms

Plaintiffs challenge as inadequate the search terms adopted by OMB, which searched only "PACEI," or "election commission" or "election integrity commission," and by DHS, which searched "Presidential Advisory Commission on Election Integrity" or "Election Commission" or "Commission" and "Voter Fraud"—searches that were much narrower than, for example, DOJ-OIP, which searched "Election Integrity," "voter fraud," "voting system," the names of members of the Commission, "citizenship status," "voter registration list," "voter file data," "voter roll data," ("detail" AND "commission"), ("assignment" AND "commission"). James Holzer Decl., ECF 88, at 6; Heather Walsh Decl. ECF 87, at 6; Vanessa R. Brinkmann Decl., ECF 82, at 10–11.

Generally, agencies need show only that the search terms are reasonable and adequate to respond to a FOIA request. *See Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). Adequacy requires that "the search was reasonably calculated to discover the requested documents, not [that] it actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

Federal agencies have discretion to craft the search terms that they believe to be reasonably tailored to uncover documents responsive to a FOIA request. *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). FOIA petitioners cannot dictate

the search terms to be used. "Where the search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015). However, an agency's choice of search terms is not conclusive. Where challenged, agencies have to explain why certain search terms, clearly relevant, were not used. *Immigrant Defense Project v. United States Immigration and Customs Enforcement*, 208 F. Supp. 3d 520, 528 (S.D.N.Y. 2016).

The contrast between the overly narrow search terms used by DHS and OMB, and those employed by the other agencies responding to essentially the same requests, is marked, and make clear the unreasonableness of DHS' and OMB's approach. DHS and OMB fail to explain why terms as obvious as those employed by sister agencies were not used. With blinkers on, the world can't fully be seen. I order defendants OMB and DHS to conduct their searches using the search terms employed by DOJ-OIP, that is, "Election Integrity," "voter fraud," "voting system," the names of members of the Commission, "citizenship status," "voter registration list," "voter file data," "voter roll data," ("detail" AND "commission"), ("assignment" AND "commission").

## B.    Private Email Accounts

Plaintiffs ask that Defendants search the private email accounts of two agency employees, John Gore and Maureen Riordan, and ask relevant agency employees to report if they have potentially responsive records outside of an official records system, such as in a private email account. Defendants argue that they need search only agency records, and that there is no evidence that private email accounts contained agency records that were not also included in an official government repository.

"[E]mployees' communications on non-agency accounts may constitute 'agency records' subject to the FOIA." *Wright v. Admin. for Children & Families*, No. 15-cv-218, 2016

9

WL 5922293, at *7–*8 (D.D.C. Oct. 11, 2016); *see also Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149 (D.C. Cir. 2016) ("[A]n agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the records do not lose their agency character just because the official who possesses them takes them out the door or because he is the head of the agency."). "[A]n agency cannot shield its records from search or disclosure under FOIA by the expedient of storing them in a private email account controlled by the agency head . . . ." *Competitive Enter. Inst.*, 827 F.3d at 146. To preserve records within the scope of FOIA, statutes and regulations require agency employees to store records within official systems. 36 C.F.R. § 1236.22(b) ("Agencies that allow employees to send and receive official electronic mail messages using a system not operated by the agency must ensure that Federal records sent or received on such systems are preserved in the appropriate agency recordkeeping system."); *see also* 44 U.S.C. § 2911(a) (agency employees and officers "may not create or send a record using a non-official electronic messaging account" without copying or forwarding a copy of the record to the agency).

The record is clear that Acting Assistant Attorney Gore sent and received emails relating to voter fraud, and that DOJ attorney Riordan received emails discussing election integrity, on their private email accounts. Moreover, Gore was substantially late in forwarding emails from his private account to official accounts, beyond the twenty-day period required by 44 U.S.C. § 2911(a), for example, an email of July 5, 2017 that was not forwarded until September 27, 2017, eighty-four days later.

Evidence of a record on a personal account is sufficient to raise a question of compliance with recordkeeping obligations, rendering the presumption of compliance inapplicable. *Judicial Watch, Inc. v. Department of Justice*, 319 F. Supp. 3d 431, 438 (D.D.C.

10

2018) (finding search adequate that was not restricted to custodian's official account); *see also Wright*, 2016 WL 5922293 at \*8 ("This presumption [of discharge of official duties] may be subject to rebuttal . . . ."). In this case, the existence of emails on personal accounts, and Gore's failure to forward emails timely, raise a material question whether "government email account[s] [are] the only record system likely to contain agency records responsive to [Plaintiffs'] FOIA requests." *Judicial Watch, Inc.*, 319 F. Supp. 3d at 438. The official custodians must ask relevant employees if they used private email accounts relating to the Commission's business and, if so, to produce the documents. *Cf. Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (presumption applies where custodian files declaration showing 4,500 instances of compliance with email forwarding rule); *Wright*, 2016 WL 5922293 at \*8 (presumption applies where agency counsel specifically consulted agency personnel).

The use of private email accounts to conduct official business has become commonplace. Mobile electronic devices and communication platforms have proliferated, and the boundaries between home and office, and personal and business travel, have blurred. Reports of public officials using personal accounts or devices to conduct official business and, at times, to evade disclosure regulations have become the subjects of public discourse. *See, e.g.*, Steve Zansberg, *Cloud-Based Public Records Pose New Challenges for Access*, 31 Comm. Law. 12, 12 (2015) (collecting reports); Daniel Pitcalm & Zoe Grotophorst, *The State of Internal Workplace Communication*, Government Executive (March 5, 2015), https://www.govexec.com/insights/state-internal-workplace-communication/106737/ (reporting that 33% of 412 government employees surveyed used personal email for government business).

In an environment of widespread use of personal devices for official work, there is danger of an incentive to shunt critical and sensitive communication away from official channels and out of public scrutiny, with decisions to forward the communications to official record repositories postponable at the whim of the public official. The practice is inconsistent with "the citizen's right to be informed about what their government is up to," the very purpose of FOIA. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks and citation omitted); *see also Competitive Enter. Inst.*, 827 F.3d at 150. ("If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, [the] purpose [of FOIA] is hardly served."). The presumption argued by the Government is not applicable in this case.

The Government argues that the Plaintiffs' FOIA requests would burden hundreds or thousands of personal email accounts. This is not the case, and is not what Plaintiffs seek. Plaintiffs' requests are limited to two people, plus requests by the records custodians to relevant persons in their departments to search for, and forward, responsive private communications on matters relating to the Commission's business. Plaintiffs' requests are reasonable and are not barred by presumptions.

## Conclusion

Plaintiffs' motion for partial summary judgment is granted, and Defendants' motion is denied. The parties shall meet and agree to a reasonable timeline for Defendants' production and, failing agreement, report to the Court by joint letter their items of disagreement. The Clerk is instructed to terminate the motions (ECF 75, 79).

SO ORDERED.

Dated:       April 30, 2019
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge