UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRENNAN CENTER FOR JUSTICE, and
THE PROTECT DEMOCRACY PROJECT,

                Plaintiffs,

                v.

U.S. DEPARTMENT OF JUSTICE,
U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. GENERAL SERVICES ADMINISTRATION,
OFFICE OF MANAGEMENT AND BUDGET, and U.S.
SOCIAL SECURITY ADMINISTRATION,

                Defendants.

17 Civ. 6335 (AKH)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S APRIL 30, 2019 OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2714
Fax: (212) 637-2686

CASEY K. LEE
Assistant United States Attorney
*Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ..............................................................................................4

A. The Court's Directives Regarding Personal E-Mail Account Searches in
Its April 30, 2019 Opinion and Order.............................................................6

B. John Gore's and Maureen Riordan's Official Work Duties and at-Issue
Use of Personal E-Mail...............................................................................7

C. Subsequent History and Defendants' Compliance with the Opinion
and Order .............................................................................................9

LEGAL STANDARDS ....................................................................................10

ARGUMENT ..............................................................................................11

The Court Should Reconsider the Opinion's Departure from the Presumption That
Agency Employees Comply with Policies on the Use of Personal E-mails for
Official Duties...........................................................................................11

A. The Opinion Misapprehended the Nature of Certain Documents Merely
Relating to the Commission, Which Are Not Agency Records Subject
to FOIA ...............................................................................................12

B. The Court Should Reconsider the Opinion's Disregarding or Overriding
the Presumptions of Regularity, and of Good Faith Accorded to
Government FOIA Declarations ....................................................................18

CONCLUSION..............................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*,
    742 F.2d 1484 (D.C. Cir. 1984) .......................................................... 14, 15

*Carney v. Dep't of Justice*,
    19 F.3d 807 (2d Cir. 1994) .................................................................... 18

*Competitive Enter. Inst. v. Office of Sci. & Tech Policy*,
    827 F.3d 145 (D.C. Cir. 2016) ................................................................ 13

*Doe v. NYC Dep't of Social Servs.*,
    709 F.2d 782 (2d Cir. 1983) .................................................................. 10

*Dolin, Thomas & Solomon LLP v. U.S. Dep't of Labor*,
    2010 WL 5342821 (W.D.N.Y. Nov. 5, 2010) ......................................... 11

*Doyle v. U.S. Dep't of Homeland Sec'y*,
    331 F. Supp. 3d 27 (S.D.N.Y. 2018) ................................................. 13, 15

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*,
    2014 WL 1282550 (S.D.N.Y. Mar. 31, 2014) ........................................ 10

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) .................................................................. 14

*Judicial Watch v. Dep't of Def.*,
    2006 WL 1793297 (D.D.C. June 28, 2006) ....................................... 20, 21

*Judicial Watch, Inc. v. Dep't of Justice*,
    319 F. Supp. 3d 431 (D.D.C. 2018) .......................................................... 6

*Judicial Watch, Inc. v. Fed. Housing Fin. Agency*,
    646 F.3d 924 (D.C. Cir. 2011) ................................................................ 15

*Judicial Watch, Inc. v. U.S. Dep't of Health and Human Servs.*,
    27 F. Supp. 2d 240 (D.D.C. 1998) .......................................................... 22

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
    726 F.3d 208 (D.C. Cir. 2013) .......................................................... 13, 15

*Labella v. Fed. Bureau of Investigation*,
    2012 WL 948567 (E.D.N.Y. Mar. 19, 2012) .......................................... 21

*Latif v. Obama*,
    677 F.3d 1175 (D.C. Cir. 2011) ................................................................ 22

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    861 F. Supp. 2d 262 (S.D.N.Y. 2012) ................................................ 10, 11

*Nat'l Council of La Raza v. Dep't of Justice*,
    2004 WL 2314455 (S.D.N.Y. Oct. 14, 2004) ........................................ 11

*Oguaju v. United States*,
    378 F.3d 1115 (D.C. Cir. 2004) ................................................................ 22

*Schoenman v. Fed. Bureau of Investigation*,
    857 F. Supp. 2d 76 (D.D.C. 2012) ...................................................... 20, 21

*U.S. Dep't of Justice v. Tax Analysts*,
    492 U.S. 136 (1989) .................................................................................. 14

*United States v. Armstrong*,
    517 U.S. 456 (1996) .................................................................................. 18

*United States v. Chem. Found.*,
    272 U.S. 1 (1926) ............................................................................... passim

*United States v. Muse*,
    2007 WL 1536704 (S.D.N.Y. May 29, 2007) ........................................ 11

*United States v. Samia*,
    2017 WL 980333 (S.D.N.Y. Mar. 13, 2017) .......................................... 11

*Wolfe v. Dep't of Health and Human Servs.*,
    711 F.2d 1077 (D.C. Cir. 1983) ................................................................ 14

*Wright v. Admin. for Children & Families*,
    2016 WL 5922293 (D.D.C. Oct. 11, 2016) .......................................... passim

**Statutes**

5 U.S.C. § 552 .............................................................................................. 13

44 U.S.C. § 2911 .......................................................................................... 15

**Regulations**

36 C.F.R. § 1236.22 ...................................................................................... 15

**Other Authorities**

Daniel Pitcairn & Zoe Grotophorst, "The State of Internal Workplace Communication,"
*Government Executive*, https://www.govexec.com/insights/state-internal-workplace-
communication/106737/ ............................................................................................................ 20

Steve Zansberg, *Cloud-Based Public Records Pose New Challenges for Access*,
31 Comm. L. 12 (2015).............................................................................................................. 21

Defendants U.S. Department of Justice ("DOJ"), U.S. Department of Homeland Security ("DHS"), U.S. General Services Administration ("GSA"), Office of Management and Budget ("OMB"), and U.S. Social Security Administration ("SSA"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for partial reconsideration of the Court's April 30, 2019, Opinion and Order granting partial summary judgment to Plaintiffs, *see* Dkt. No. 99 ("Opinion" or "Op.").  Defendants respectfully seek reconsideration of the Court's order that Defendants conduct searches of Principal Deputy Assistant Attorney General John Gore's and DOJ Attorney Maureen Riordan's personal e-mail accounts, Op. 9-11, and poll "relevant employees" regarding any use of "private email accounts relating to the Commission's business," *id.* at 11. Defendants are in the process of complying with the portions of the order that required additional electronic searches using specified search terms.

## PRELIMINARY STATEMENT

The Court should reconsider the Opinion's directives regarding the personal e-mail accounts of Defendants' employees because that ruling reflects a misapprehension of a critical issue Defendants raised: Whether agency employees' personal e-mails are agency records subject to FOIA simply because they relate to or discuss the Presidential Advisory Commission on Election Integrity ("Commission").  The Opinion is necessarily premised on the view that such e-mails are agency records—and consequently on a misperception of certain e-mails that had been forwarded from personal e-mail to official agency accounts—resulting in the Opinion's mistaken conclusion that the presumption of agencies' compliance with their recordkeeping obligations was "not applicable in this case."  As explained below, reconsideration is therefore

proper to avoid legal and factual error, and to promote the interests of justice by eliminating unwarranted intrusion into public employees' personal correspondence.

Agencies are entitled to a presumption that their employees comply with their obligations to preserve e-mails from a personal account used to conduct official agency business, which obviates a need to probe any personal e-mail accounts. Courts have long required "clear evidence" to rebut that presumption. In finding the presumption rebutted, the Opinion primarily relies on its finding that certain personal e-mails from two DOJ employees, Mr. John Gore and Ms. Maureen Riordan, either "relat[ed] to voter fraud" or "discuss[ed] election integrity." But that finding, standing alone, does not render those e-mails agency records subject to disclosure under FOIA. The mere fact that a personal e-mail relates to official agency business does not make that e-mail an agency record.

Rather, a central issue is whether a document or communication was created or obtained in the agency's conduct of its official business; if an agency does not create or rely on a document in conducting its official duties, that document is not an agency record subject to FOIA's disclosure requirements. But here, no evidence in the factual record establishes that either Mr. Gore's or Ms. Riordan's at-issue e-mails were used to conduct official agency business. To the contrary, Mr. Gore and Ms. Riordan have prepared declarations[1] making clear

---

[1] Prior to the Court's order issued this evening at 6:23 p.m. denying Defendants' May 22, 2019 application for leave to filed additional declarations, *see* Dkt. Nos. 102, 103, Mr. Gore and Ms. Riordan had prepared declarations pursuant to 28 U.S.C. § 1746 explaining their official agency work duties and that the e-mails relied on by the Opinion were not used to conduct any of those duties. Defendants intended to support this motion with these declarations; because of the timing of the Court's ruling, this memorandum contains discussion of and citation to the declarations, which bear on a key issue left unaddressed by the Opinion, and which will also serve as an offer of proof in the event the Court reconsiders and is willing to take the declarations into account. Defendants therefore respectfully request that, at a minimum, the Court reconsider its denial of leave to file additional declarations and (as suggested in their application, *see* Dkt. No. 102) permit Defendants to file Mr. Gore's and Ms. Riordan's declarations pending the Court's

2

that the at-issue e-mails were *not* used to conduct any of their official work duties—indeed, those employees affirm that they did *not* use their personal e-mail accounts to conduct any official agency business at all, and that their work duties did not involve the Commission. These attestations would further demonstrate that the e-mails on which the Opinion relies were personal, not agency, records; they therefore cannot serve as "clear evidence" rebutting the legally required presumption that agencies preserve personal e-mails used to conduct official agency business.

Once this misapprehension is rectified, the Opinion's remaining grounds for finding the presumption inapplicable do not support the Opinion's holding or the relief granted as to agency employees' personal e-mails. *First*, the Opinion concludes that Mr. Gore did not meet a statutory time limit for forwarding certain e-mails from his personal e-mail account to his official agency account. But that requirement applies only to e-mails used to conduct official agency business, which (as explained) has not been established here.

*Second*, the Opinion relies on a general assertion about the purported "commonplace" use of private e-mail accounts to conduct official business. That assertion, however, does not speak to the presumption at issue in this case, which is that when agency employees do use private e-mail accounts to conduct official business, they properly preserve those e-mails.

---

decision on whether they should be formally considered in support of Defendants' reconsideration motion.

But even if the Court declines to consider the contents of these declarations, reconsideration of the Opinion is warranted due to the Court's misapprehension of the nature of the personal-account e-mails on which the Opinion relied, and because the factual record (which, according to the Court, was closed at the submission of briefs, *see* Dkt. No. 103 at 2) does not contain the "clear evidence" required to rebut the presumption that Defendants properly complied with recordkeeping requirements.

*Third*, the Opinion cites two publications—outside the factual record—regarding alleged public employee use of private e-mails. Neither article provides "clear evidence" sufficient to rebut the presumption to which Defendants are entitled. Courts have readily refused to rely on publications that do not bear on the specific facts of, and the particular search performed by the agency in, that instance. By contrast, the cited articles supposedly provide either aggregated figures about at least 30 different federal agencies (not the specific defendant agencies in this case, let alone custodians with potentially responsive records), or incidents regarding the use of e-mails by state—not federal—government employees and officials.

*Fourth*, the Opinion raises a concern about a possible incentive to evade recordkeeping requirements and hide communications used to conduct government business in private e-mail accounts. But that precise concern is addressed by the recordkeeping policies that agencies (including Defendants) are presumed to have followed; consequently, a bare fear that officials could improperly obscure official agency communications is not enough to rebut that presmption.

In summary, the Opinion's rationales for ordering both a search of Mr. Gore's and Ms. Riordan's personal e-mail accounts for communications relating to the Commission, and an inquiry directed to "relevant custodians" regarding any use of private e-mail accounts "relating to the Commission's business," were clearly erroneous and merit reconsideration. The Court should therefore grant Defendants' motion and eliminate those directives.

## BACKGROUND

The lengthy history of this Freedom of Information Act ("FOIA") case is detailed in Defendants' prior papers and recited here where relevant to this motion. *See* Dkt. No. 80. Briefly, Plaintiffs initially moved for (among other relief) an order requiring agency searches of "private emails of agency personnel" or alternatively, "limited discovery on agency personnel's

use of private email for agency business." Dkt. No. 76 at 26. Defendants opposed Plaintiffs'
motion and cross-moved for partial summary judgment regarding the adequacy of the searches
that each defendant agency had already conducted. Dkt. No. 79; Dkt. No. 80 at 37.

At oral argument on November 20, 2018 (transcript at Dkt. No. 92 ("Hearing Tr.")),
Plaintiffs modified their requested relief, noting that "[w]e don't need to search everybody's
private e-mail." Hearing Tr. 25:18-19; *see also id.* 25:17-19 ("I don't think we need a search. I
think we can ask them. If they say no, that's good enough."); *id.* 24:15 ("we don't think a search
of the private e-mails in the first instance is the best way to handle this"). Instead, Plaintiffs
sought a search of Mr. Gore's and Ms. Riordan's private e-mail accounts, *see id.* 16:5-17:8, and
declarations from Defendants "[t]hat they have inquired from their custodians whether they have
used private e-mail," *id.* 26:15-16; *see also id.* 25:2-5. With respect to the latter, Plaintiffs cited
DOJ-OLC's procedures as "a good example," *id.* 27:16, and noted that GSA "ha[d] come pretty
close to doing" what Plaintiffs requested, *id.* 24:7-8.

In opposing such relief, Defendants not only pointed to the presumption that agencies and
their employees are presumed to comply with their official duties (including recordkeeping
obligations), *id.* 12:19-14:2, but also squarely raised the issue of whether the e-mails on which
Plaintiffs relied for their requested relief were agency records subject to FOIA, *id.* 20:10-13.
Defendants pointed out that FOIA only applies to "agency records," *id.* 20:11-12, and that Mr.
Gore's and Ms. Riordan's at-issue personal e-mails were not agency records because no evidence
was presented suggesting that these e-mails were used to conduct official agency business, *id.* at
14:15-22, 17:17-18:9, 19:21-20:4.

The Court reserved decision on Plaintiffs' two requests regarding private e-mail accounts
*id.* 28:17. On April 30, 2019, the Court entered the Opinion, which granted Plaintiffs' requests.

**A.** **The Court's Directives Regarding Personal E-mail Account Searches in Its April 30, 2019 Opinion and Order**

Despite Defendants' raising the issue at oral argument, the Court's Opinion does not explicitly address whether the at-issue e-mails from Mr. Gore's and Ms. Riordan's personal e-mail accounts were in fact agency records subject to disclosure under FOIA, or mere private e-mails outside FOIA's reach. Rather, the Court simply notes that employee communications on non-agency accounts "may constitute 'agency records' subject to FOIA," Op. 9, and that, ordinarily, agency employees are required "to store records within official systems" and ensure that "Federal records sent or received" on non-official systems "are preserved in the appropriate agency recordkeeping system." *Id.* at 10. The Court noted, based on Plaintiffs' observation that one of the agencies' FOIA productions in this case included a limited number of emails that had been forwarded from personal email accounts of Mr. Gore and Ms. Riordan, that "[Mr.] Gore sent and received emails relating to voter fraud, and that [Ms.] Riordan received emails discussing election integrity, on their private email accounts." *Id.* The Court further deemed Mr. Gore "substantially late in forwarding emails from his private account to official accounts, beyond the twenty-day period required by" statute, noting that Mr. Gore forwarded one e-mail to his work account 84 days after it appeared on his personal account. *Id.*

The Court held that evidence of a record existing "on a personal account is sufficient to raise a question of compliance with recordkeeping obligations, rendering the presumption of compliance inapplicable." *Id.* (citing *Judicial Watch, Inc. v. Dep't of Justice*, 319 F. Supp. 3d 431, 438 (D.D.C. 2018)). The Court concluded that the "existence of emails on personal accounts, and Gore's failure to forward e-mails timely, raise a material question whether" government e-mail systems are the only record system likely to contain responsive records. *Id.* at 11. Further, the Court opined based on two publications that private e-mail is frequently used

"to conduct official business," *id.*, and that as a result, there is a "danger of an incentive to shunt critical and sensitive communication away from official channels and out of public scrutiny." *Id.* at 12. Based on these reasons, the Court concluded, the presumption of regularity of agency searches and declarations "is not applicable in this case." *Id.*

Rejecting the Government's argument that the relief sought by Plaintiffs would "burden hundreds or thousands of personal email accounts" based on an insufficient showing by Plaintiffs, the Court observed that "Plaintiffs' requests are limited to two people, plus requests by the records custodians to relevant persons in their departments to search for, and forward, responsive private communications on matters relating to the Commission's business." *Id.* The Court concluded, "Plaintiffs' requests are reasonable and not barred by presumptions." *Id.*

The Court therefore held that Plaintiffs' "motion for partial summary judgment is granted, and Defendants' motion is denied." The Court directed the parties to "meet and agree to a reasonable timeline for Defendants' production and, failing agreement, report to the Court by joint letter their items of disagreement." *Id.* at 13.

## B. John Gore's and Maureen Riordan's Official Work Duties and at-Issue Use of Personal E-mail

Defendants explained at earlier stages of this litigation that the e-mails Mr. Gore and Ms. Riordan had forwarded to their Justice Department e-mail accounts from their personal e-mail accounts were not "agency records" or official-capacity communications when they were received by or sent from the personal email accounts. *See supra* p. 5 (citing record). Further, Defendants represent that Mr. Gore and Ms. Riordan have prepared and executed declarations that more fully answer a legally controlling question not specifically addressed by the Opinion— namely, whether their at-issue e-mails as they existed on their personal e-mail accounts are properly deemed "agency records" under FOIA—and make clear that they are not. These

declarations also explain that the emails Mr. Gore and Ms. Riordan forwarded from personal accounts onto work accounts were not official-duty communications, and attest that neither official sent or received official work communications on their personal e-mail accounts.

The declarations also provide additional details about the job duties of the employees in question. Mr. Gore's official work duties consisted at different times of helping to lead or personally leading the DOJ's Civil Rights Division ("DOJ-CRT") in all of its activities, including enforcing the Voting Rights Act of 1956. *See* Declaration of John Gore ("Gore Decl.") ¶¶ 1-3 (May 28, 2019). Mr. Gore was also responsible for providing advice on policies and procedures in connection with matters regarding civil and criminal civil rights litigation; and on matters involving the enforcement of federal states, executive orders, and regulations assigned to DOJ-CRT. *Id.* ¶¶ 2-3. Neither Mr. Gore, nor DOJ-CRT, "had any relationship with the [Commission]." *Id.* ¶ 5. Since joining DOJ-CRT in January 2017, Mr. Gore did not use personal e-mails to conduct any DOJ-CRT business. *Id.* ¶¶ 5, 10. The e-mails on which both Plaintiffs and the Opinion rely "were not official-capacity communications" and were not "sent or received in the course of [his] employment with [DOJ-CRT]." *Id.* ¶¶ 8-9. Rather, Mr. Chris Cleveland (whom Mr. Gore knew "from outside [his] work for [DOJ-CRT]") e-mailed Mr. Gore at his personal e-mail address to ask if he "had a relationship" with the Commission. *Id.* ¶ 7. Mr. Gore responded that he did not "have any relationship with the [Commission]," and offered to put Mr. Cleveland in contact with a member of the Commission. *Id.* Mr. Gore "did not understand or interpret [Mr. Cleveland's] inquiry to be asking about the work of [DOJ-CRT], or to constitute an official-capacity communication." *Id.* ¶ 8. But "in an abundance of caution," Mr. Gore forwarded the e-mail exchange to his official DOJ e-mail account. *Id.* ¶ 9.

Ms. Riordan's official work duties consisted of representing the United States in investigations and litigation brought under the voting rights laws that DOJ-CRT enforced, and later assisting Mr. Gore with review of DOJ-CRT's work regarding voting rights—including conducting legal research, reviewing the Voting Section's recommendations, and participating in meetings and discussions about DOJ-CRT's voting work; none of her work duties at DOJ-CRT involved the Commission. Declaration of Maureen Riordan ("Riordan Decl.") ¶¶ 3-4 (May 28, 2019). Ms. Riordan did not use her personal e-mail account to conduct any official agency business since joining DOJ-CRT in August 2000. *Id.* ¶ 5. And while Ms. Riordan did forward two e-mails from her personal e-mail account to her official DOJ account that were authored by Mr. Christian Adams, a member of the Commission who was also a former colleague, she did so solely out of personal convenience—*i.e.*, to be able to read those e-mails and any attachments (which pertained to her personal interests, not any of her official work duties) at work, since she did not access her personal e-mail account from her work computer and spent the majority of her day at DOJ-CRT. *Id.* ¶¶ 7-8. Ms. Riordan never asked Mr. Adams to send her the two e-mails, nor did she ever use those e-mails as part of her official work duties. *Id.* ¶ 9.

### C. Subsequent History and Defendants' Compliance with the Opinion and Order

After the Court issued the Opinion, Defendants requested and received a 14-day extension of their deadline to move for reconsideration or other modification of the Opinion. *See* Dkt. Nos. 100, 101. In addition, on May 22, 2019, Defendants requested leave to file additional declarations in support of this motion for reconsideration, or in the alternative, leave to file declarations with the Court pending its decision on whether to permit those declarations to be formally considered in support of this motion. Dkt. No. 102. As noted, at approximately 6:23 p.m. on the day this motion was due, the Court denied this request. Dkt. No. 103.

Defendants do not challenge the portion of the Court's Opinion directing OMB and DHS to conduct searches using the search terms applied by DOJ-OIP, *see* Op. 9; those agencies are continuing their preparations to comply with this directive and are communicating with Plaintiffs regarding any new searches, if necessary. *See* Dkt. Nos. 100, 102. With respect to the Court's instruction that Defendants conduct an inquiry of "relevant employees" regarding any use of "private email accounts relating to the Commission's business," Op. 11, the parties have agreed by e-mails exchanged on May 16, 2019 that DOJ-OLC and GSA have fulfilled this requirement, and that the remaining defendant agencies may also meet it by taking steps similar to those undertaken by DOJ-OLC, *see* Dkt. No. 83 ¶ 18. While the primary focus of Defendants' motion is a request for reconsideration of the Opinion's direction that Defendants search the personal email accounts of Mr. Gore and Ms. Riordan, the reasons for that request also warrant reconsideration of the Opinion's ruling that additional agencies canvass employees to see if they maintain any agency records related to the Commission outside of official agency systems. In the event that the Court denies Defendants' request for reconsideration of this command, those remaining agencies will complete an inquiry in the manner carried out by DOJ-OLC.

## LEGAL STANDARDS

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "A motion for reconsideration of an order is appropriate . . . to correct clear error, prevent manifest injustice, or upon the availability of new evidence," *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 2014 WL 1282550, at *9 (S.D.N.Y. Mar. 31, 2014); *accord Doe v. NYC Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)—in

sum, matters "that might reasonably be expected to alter the conclusion reached by the court,"

*Liberty Media Corp.*, 861 F. Supp. 2d at 265.

Although typically "Local Rule 6.3 must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court" or "new arguments that could have been previously advanced," *id.*, those limits are loosened where the issues to be reconsidered involve "important public interests," such as the release of documents under FOIA.  *Nat'l Council of La Raza v. Dep't of Justice*, 2004 WL 2314455, at *1 (S.D.N.Y. Oct. 14, 2004); *Dolin, Thomas & Solomon LLP v. U.S. Dep't of Labor*, 2010 WL 5342821, at *1 (W.D.N.Y. Nov. 5, 2010); *see also United States v. Samia*, 2017 WL 980333, at *3 (S.D.N.Y. Mar. 13, 2017); *United States v. Muse*, 2007 WL 1536704, at *2 (S.D.N.Y. May 29, 2007).

## ARGUMENT

### The Court Should Reconsider the Opinion's Departure from the Presumption That Agency Employees Comply with Policies on the Use of Personal E-mails for Official Duties

The Court should reconsider its Opinion as to the personal e-mail accounts of agency employees, and specifically Mr. Gore and Ms. Riordan, for the fundamental reason that it misapprehended the nature of the few specific e-mails on which it relied to conclude that other personal-account e-mails may constitute official agency records.  As a result, the Court lacked an adequate basis to overcome the applicable presumption that agencies and their employees comply with recordkeeping and other official requirements—both as this principle applies to Mr. Gore's and Ms. Riordan's personal email accounts, and as it applies more generally to all agency employees' accounts.

Agencies are entitled to a presumption that their employees properly discharge their official duties—including their obligations to preserve any e-mails from a personal account used to conduct official agency business.  *Wright v. Admin. for Children & Families*, 2016 WL

11

5922293, at *8 (D.D.C. Oct. 11, 2016); *see also United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) ("courts presume that [public officers] have properly discharged their official duties"). Under that presumption, "agency records responsive to a FOIA request would unlikely be located solely in [agency employees'] personal e-mail accounts, rendering a search of those accounts unnecessary." *Wright*, 2016 WL 5922293, at *8.  Despite acknowledging this presumption, the Opinion nevertheless held that it "is not applicable in this case."  *See* Op. 12. For the following reasons, the Opinion's grounds for setting aside the presumption were legally and factually incorrect.

### A. The Opinion Misapprehended the Nature of Certain Documents Merely Relating to the Commission, Which Are Not Agency Records Subject to FOIA

One central underlying assumption of the Opinion is that a document that relates to or discusses either the Commission or the topic of voting rights necessarily is an "agency record" that is subject to disclosure under FOIA.  *See, e.g.*, Op. 3 ("emails concerning Commission business"); *id.* at 6 ("emails *relating* to Commission matters") (emphasis added); *id.* at 10 ("emails relating to voter fraud" and "emails discussing election integrity"); *id.* at 11 ("relating to the Commission's business").  Based on this assumption, the Opinion concluded that the presence of documents "relating to" the Commission on Mr. Gore's and Ms. Riordan's personal e-mail accounts was a sufficient basis under FOIA to rebut the presumption of agency compliance and order searches of those accounts—as well as broader inquiries across all seven defendants regarding documents outside of official agency systems.  *Id.* at 10-12.  By its own terms and without reference to additional evidence (through supplemental declarations or otherwise), that line of reasoning demonstrates a fundamental misapprehension of the nature of those e-mails and their status under applicable law, such that reconsideration should be granted even without the confirmatory declarations of Mr. Gore and Ms. Riordan.  Specifically, the fact

that e-mails that had been located on a government official's personal e-mail account discuss "voter fraud" or "election integrity" does not make those e-mails official-capacity communications, as the Opinion assumes. Further, if the Court reconsiders its refusal to permit declarations in support of this motion, Defendants will submit declarations that confirm at length, and explicitly, that the e-mails relied upon by the Opinion were not official-capacity communications, but rather personal-capacity communications that they forwarded onto their work e-mail systems. This is the very opposite of the concern raised by the Opinion, that government employees might conduct work activity on personal accounts and thereby escape agency recordkeeping requirements or accountability.

To be sure (and as the Opinion correctly observed, *see* Op. 10), if an agency employee or official "possesses what would otherwise be agency records, the records do not lose their agency character just because the official [or employee] who possesses them takes them out the door." *Competitive Enter. Inst. v. Office of Sci. & Tech Policy*, 827 F.3d 145, 149 (D.C. Cir. 2016). But that reality does not answer the question of whether Mr. Gore's and Ms. Riordan's at-issue personal-account e-mails were in fact "otherwise agency records." "Indisputably, the FOIA extends only to materials qualifying as 'agency records.'" *Wright*, 2016 WL 5922293, at *7 (citing 5 U.S.C. § 552(a)(4)(B)); *accord Doyle v. U.S. Dep't of Homeland Sec'y*, 331 F. Supp. 3d 27, 43-44 (S.D.N.Y. 2018), *appeal docketed*, No. 18-2814 (Sept. 24, 2018). "As the Supreme Court instructed," that term "extends only to those documents that an agency both (1) creates or obtains *and* (2) controls at the time the FOIA request was made." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 216 (D.C. Cir. 2013) (quotation marks and alterations omitted). And central to the question whether a document is a personal versus an agency record is whether the document was created, obtained, or came "into the agency's possession *in the legitimate conduct*

*of its official duties.*" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989) (emphasis added).

"Thus, generally speaking, personal communications of agency employees are not subject to the FOIA," *Wright*, 2016 WL 5922293, at *7, since "the term 'agency records' is not so broad as to include personal materials in an employee's possession," *Tax Analysts*, 492 U.S. at 145. By extension, the fact that a document merely relates to the official work of the agency or that employee does not that render the document an "agency record" under FOIA. FOIA "cannot be extended to sweep into FOIA's reach personal papers that may 'relate to' an employee's work . . . but which the individual does not rely upon to perform his or her duties." *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484, 1493 (D.C. Cir. 1984); *see also Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 479 (2d Cir. 1999) (same); *Wolfe v. Dep't of Health and Human Servs.*, 711 F.2d 1077, 1081 (D.C. Cir. 1983) ("The fact that the [document] 'relates to' the business of the Department would not render it an 'agency record'"). Indeed, accepting a "'relates to' theory would extend the FOIA to an essentially limitless number of materials which could be said to 'relate to' agency business. The Act was not intended to be accorded such a reach." *Wolfe*, 711 F.2d at 1081.

Instead, for Mr. Gore's and Ms. Riordan's at-issue e-mails to have been the requisite "agency records" necessary (but not sufficient) to rebut the presumption of agency compliance with recordkeeping requirements, the relevant questions are twofold. To start, for the e-mails sent by Mr. Gore, the issue is "whether, when an employee creates a document, that creation can be attributed to the agency under FOIA." *Bureau of Nat'l Affairs*, 724 F.2d at 1492. In such circumstances, "consideration of whether and to what extent that employee used the document to conduct agency business is highly relevant for determining whether that document is an 'agency

record' within the meaning of FOIA." *Id.* "Use alone, however, is not dispositive;" "[a]n inquiry is therefore required into the purpose for which the document was created, the actual use of the document, and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency." *Id.*

Similarly, for e-mails that were received by (but not created by) Mr. Gore or Ms. Riordan, the question is "whether an agency has sufficient 'control' over a document to make it an 'agency record.'" *Judicial Watch*, 726 F.3d at 218; *accord Doyle*, 331 F. Supp. 3d at 46. While courts have applied a four-factor test to determine an agency's "control" over a document, *see id.*; *Doyle*, 331 F. Supp. 3d at 46, "where an agency has neither created nor referenced a document in the 'conduct of its official duties,' the agency has not exercised the degree of control required to subject the document to disclosure under FOIA," *Judicial Watch, Inc. v. Fed. Housing Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) ("The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of opening agency action to the light of public scrutiny."). Consistent with these limitations on FOIA's scope, the statutes and regulations the Court cites make clear that agency employees are only required to preserve documents used to conduct official agency business. *See* 44 U.S.C. § 2911 (titled "Disclosure requirement for *official business* conducted using non-official electronic messaging accounts" and addressing preservation of a "record" (emphasis added)); 36 C.F.R. § 1236.22(b) (requiring preservation of "Federal records" for "*official* electronic mail messages" send on "a system not operated by the agency" (emphasis added)).

Applying these standards here, and notwithstanding the Opinion's being premised on these being official-capacity communications, no evidence has been presented that Mr. Gore's and Ms. Riordan's e-mails as they existed in their personal e-mail accounts—which were the sole agency-specific evidentiary basis of the Court's analysis and conclusions regarding personal e-mail usage—had anything to do with their respective official work duties. That dearth of evidence prohibits a finding that those e-mails were agency records subject to FOIA. And that evidentiary insufficiency alone warrants reconsideration, all the more so given that, by way of offer of proof, Defendants are prepared to submit a declaration by Mr. Gore explaining that his official work duties for DOJ-CRT involved supervising and providing advice regarding DOJ-CRT's enforcement of the federal statutes and regulations that fall within its mission, as well as providing advice on policies and procedures in connection with matters regarding civil and criminal civil rights litigation; he did not use any personal e-mail account to conduct those duties. Gore Decl. ¶¶ 1-3, 5, 10. And the e-mails Plaintiffs point to involve a personal request to Mr. Gore, sent to his personal account from Mr. Chris Cleveland, an individual whom Mr. Gore knew from outside his official work duties, to be put in contact with someone on the Commission, which is indisputably not an agency—let alone one that employs Mr. Gore. *Id.* ¶ 7. Passing along information to someone on the Commission was not (and did not pertain to) any of Mr. Gore's official agency duties, and nothing indicates that Mr. Gore purported to do so on behalf of DOJ-CRT. *See id.* ¶¶ 5, 8-10; Dkt Nos. 77-22, 77-23. Further, nothing on the face of the at-issue e-mails suggests that Mr. Cleveland was asking Mr. Gore about the work of DOJ-CRT; indeed, Mr. Gore attests that he understood those e-mails to have been sent and received in his personal capacity. Gore Decl. ¶¶ 8-9.

Meanwhile, the two e-mails Ms. Riordan received clearly and on their face were not "agency records." Those e-mails amount to a published news article sent to what appears to be a general subscriber list, and a message attaching publicly filed briefs in a litigation. *See* Dkt. Nos. 77-24, 77-25. This fact alone warrants reconsideration because of the Court's misapprehension of their nature and significance, which, again, is further explained by the proposed new Riordan Declaration. As Ms. Riordan is prepared to explain, her official work duties involved representing the United States in investigations and litigation brought under the voting rights laws that DOJ-CRT enforced, and later assisting Mr. Gore with review of DOJ-CRT's work regarding voting rights; Ms. Riordan did not rely on any of these documents in conducting those duties. Riordan Decl. ¶¶ 3-5, 9. Rather, Ms. Riordan explained that she simply forwarded these e-mails onto her own account so that she could more easily read the attachments while at work using her computer there. *Id.* ¶ 8. Thus, the e-mails as located on Ms. Riordan's personal e-mail account are in no sense agency records. That eliminates any reasonable possibility that the e-mails could justify a broad search of Ms. Riordan's personal e-mail account. And in any event, the fact that Ms. Riordan forwarded both e-mails immediately to her official work e-mail account further undermines any possible basis to conclude that Ms. Riordan harbors agency records on her personal account—which she now has sworn she does not. *See generally* Riordan Decl.

In summary, because of the lack of any evidence showing that Mr. Gore's and Ms. Riordan's at-issue e-mails were sent or received for the purposes of conducting their respective official work duties, they are not "agency records," and thus not subject to disclosure under FOIA. Moreover, since those e-mails are not "agency records," they do not—and cannot—form a valid or sufficient basis for finding that any responsive agency records exist on Mr. Gore's, Ms. Riordan's, or any other agency employee's personal e-mail accounts. Nor can those e-mails

rebut the presumption that agency employees complied with their agency recordkeeping duties—including ordinarily conducting agency business solely on agency communication systems, and forwarding any official agency business e-mails that did exist on a personal e-mail account to an official agency account.[2]  The Court therefore should reconsider its Opinion, which relied principally on those e-mails in directing Defendants to search Mr. Gore's and Ms. Riordan's personal e-mail accounts, and to ask relevant employees if they used private email accounts *relating to the Commission's business* and, if so, to produce the documents."  Op. 11 (emphasis added).

### B.    The Court Should Reconsider the Opinion's Disregarding or Overriding the Presumptions of Regularity, and of Good Faith Accorded to Government FOIA Declarations

As the Opinion acknowledged, Op. 10-11, Defendants are typically entitled to a presumption that their employees preserved any e-mails from a personal account used to conduct official agency business, *see Wright*, 2016 WL 5922293, at *8—indeed, Defendants confirmed in their declarations that they found no basis to find otherwise.  *See* Dkt. No. 82 ¶¶ 34-38; Dkt. No. 83 ¶ 18; Dkt. No. 84 ¶¶ 13-14; Dkt. No. 85 ¶ 11; Dkt. No. 86 ¶ 11; Dkt. No. 87 ¶ 10; Dkt. No. 88 ¶¶ 24-26.  Case law dictates not only that setting aside this presumption requires "clear evidence to the contrary," *Chem. Found.*, 272 U.S. at 14-15; *accord United States v. Armstrong*, 517 U.S. 456, 465 (1996), but also that Defendants' declarations are entitled to a presumption of good faith that Plaintiffs have the burden of rebutting, *see Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *Wright*, 2016 WL 5922293, at *8.  Here, the Opinion primarily relied on

---

[2] Indeed, even if the Court concludes (despite the lack of supporting record evidence) that Mr. Gore's and Ms. Riordan's at-issue e-mails were "agency records" subject to FOIA, there remains a complete absence of any evidence that employees at any of the defendant agencies or components other than DOJ-CRT used personal e-mail accounts to conduct official business at those agencies or components.  Consequently, those e-mails, even if deemed agency records, offer no basis to rebut the presumption of compliance for the other defendants.

the existence of e-mails from Mr. Gore's and Ms. Riordan's personal accounts that, as explained above, were not in fact official-capacity agency communications. None of the other facts or considerations identified by the Opinion justify its directives regarding private e-mail accounts. Reconsideration therefore is warranted.

*First*, the Opinion states that Mr. Gore "was substantially late in forwarding emails from his private account to official accounts, beyond the twenty-day period required by 44 U.S.C. § 2911(a)." Op. 10. But as already explained, that statute only applies to e-mails used to conduct official agency business, which has not been established here. The twenty-day limitation therefore does not apply. Defendants previously explained that these were not work records at all as they existed on Mr. Gore's personal account, *see supra* p. 5; Mr. Gore's declaration specifically explains that he forwarded these e-mails in an abundance of caution, not because his e-mails were used for official agency business. Gore Decl. ¶ 9. Thus, the timing of Mr. Gore's forwarding these emails to his work account cannot constitute "clear evidence" that any Defendant did not comply with applicable duties to preserve records.

*Second*, the Opinion stated that "[t]he use of private email accounts to conduct official business has been commonplace," and that "the boundaries between home and office, and personal and business travel, have blurred." Op. 11. But this general observation is not supported by any competent evidence in the record, and it does not shed light on whether particular Government employees who are subject to specific records requirements comply with those requirements. Even apart from Mr. Gore's and Ms. Riordan's attestations that they conduct official business solely using their work accounts, the presumption at issue is *not* that agency employees refrain entirely from using private e-mail accounts to conduct official business; rather, the presumption is that if and when agency employees *do* use private e-mails

accounts for official agency business, they properly preserve the e-mails and other documents on those accounts that were used to conduct official agency business.  And Defendants confirmed in their declarations that they found no evidence that any agency employee acted contrary to these requirements.

*Third*, the Opinion's reliance on two publications—outside the factual record, which "closed at the submission of briefs," Dkt. No. 103 at 2—regarding public employee use of private e-mails, *see* Op. 11, is misplaced.  *See Schoenman v. Fed. Bureau of Investigation*, 857 F. Supp. 2d 76, 87 (D.D.C. 2012) (declining to rely on news article that did not "bear[] upon the adequacy of the [agency]'s search under the specific facts of this case"); *Judicial Watch v. Dep't of Def.*, 2006 WL 1793297, at *4 (D.D.C. June 28, 2006) (declining to rely on news articles offered to "assert[] that *some* responsive documents might exist *somewhere* within the [agency]" because, among other things, that "did not demonstrate that the agency failed to search *particular* offices or files that may have contained responsive records" (quotation marks omitted)).

The Opinion first cites an online media article reporting that approximately one-third of 412 federal government employees from "at least 30 different departments and agencies" at least "sometimes" used personal e-mail accounts for official government business.  *See id.* (citing Daniel Pitcairn & Zoe Grotophorst, "The State of Internal Workplace Communication," *Government Executive*, https://www.govexec.com/insights/state-internal-workplace-communication/106737/ [hereinafter "Pitcairn & Grotophorst"]).  Even assuming solely for argument's sake that the contents of this article are accurate,[3] the generalized figures offer no

_____

[3] The reported figures are purportedly from an e-mail-based survey of a random sample of "print and online subscribers."  Pitcairn & Grotophorst.  Although the article claims that "412 federal employees completed the survey," and "include representatives from at least 30 different departments and agencies," it does not describe any methodology for confirming that the survey participants were in fact federal employees.  *Id.*

basis to conclude that any of the seven defendant agencies in this case (out of the reported 30 or more federal departments or agencies), let alone the custodians with records potentially responsive to Plaintiffs' FOIA requests, conducted official agency business on private e-mail accounts and failed to properly preserve those records. *See Labella v. Fed. Bureau of Investigation*, 2012 WL 948567, at *11 (E.D.N.Y. Mar. 19, 2012) (news articles reporting prior instances of agency's alleged improper withholding or hiding information from FOIA plaintiffs did "not demonstrate that the [agency] failed to conduct a reasonable search or acted in bad faith in this specific instance"); *id.* at *10 (rejecting reliance on third-party press release merely suggesting that agency may have information responsive to plaintiff's FOIA request).

The Opinion also relies on "reports of public officials using personal accounts or devices to conduct official business and, at times, to evade disclosure regulations." Op. 11 (citing Steve Zansberg, *Cloud-Based Public Records Pose New Challenges for Access*, 31 Comm. Law. 12, 12 (2015) [hereinafter "Zansberg"]). But this article describes incidents regarding the use of e-mails by *state* government employees and officials. *See* Zansberg 12 & n.6 (reports regarding New York, Florida, Pennsylvania, Colorado, and New Mexico state governments). Those reported incidents have no bearing on whether Defendants—*federal* agencies with their own distinctive rules and management procedures—properly complied with their e-mail preservation duties, nor did Plaintiffs or the Opinion identify any specific instances or general pattern of recordkeeping violations at any agency involved in this case.[4] *See Schoenman*, 857 F. Supp. 2d at 87; *Judicial Watch*, 2006 WL 1793297, at *4; *Labella*, 2012 WL948567, at *10. In short, neither of the

---

[4] The article describes elsewhere an incident involving an official of a federal agency that is not a defendant in this case. *See* Zansberg 17.

articles cited by the Opinion provide competent (let alone "clear") evidence that Defendants have not met their recordkeeping obligations.

*Fourth*, the Opinion expresses concern about a possible "danger of an incentive to shunt critical and sensitive communication away from official channels and out of public scrutiny, with decisions to forward the communications to official record repositories postponable at the whim of the public official."  Op. 12.  There is no question that such a practice would be harmful to the public interest in proper agency recordkeeping, but the concern is addressed by the very agency recordkeeping policies that the Government is legally entitled to be presumed to have followed, absent clear evidence to the contrary.  The Supreme Court has instructed that rebutting this requires "*clear evidence* to the contrary," *Chem. Found.*, 272 U.S. at 14-15 (emphasis added)— not a mere "danger of an incentive" to act improperly, Op. 12.  *See Oguaju v. United States*, 378 F.3d 1115, 1117 (D.C. Cir. 2004) ("bare suspicion of wrongdoing" "is not sufficient to overcome the presumption of legitimacy accorded to the Government's official conduct" (quotation marks omitted)); *Judicial Watch, Inc. v. U.S. Dep't of Health and Human Servs.*, 27 F. Supp. 2d 240, 243-44 (D.D.C. 1998) ("bare" and "unsubstantiated suspicions" insufficient to rebut "presum[ption] that the agency is properly carrying out its constitutional and statutory duties").  That is because "allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing."  *Oguaju*, 378 F.3d at 1117 (brackets, quotation marks, and citation omitted).  And courts recognize that this presumption serves important purposes and must not be rendered illusory or ineffective.  *See Latif v. Obama*, 677 F.3d 1175, 1179 (D.C. Cir. 2011) (rejecting "proposed rule [that] would render the traditional presumption of regularity wholly illusory in th[at] context").  The Opinion's expressed concerns over a potential "danger" of evasion of recordkeeping requirements therefore do not overcome

the presumption that agency employees have complied with recordkeeping requirements and maintained their official-capacity communications within agency systems.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion for partial reconsideration of the Court's April 30, 2019, Opinion and Order; specifically, it should eliminate the Opinion's requirements that the agencies search Mr. Gore's and Ms. Riordan's personal e-mail accounts, and ask "relevant employees" whether they have private e-mail communications relating to the Commission's business.

Dated: New York, New York
May 28, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By:   */s/ Casey K. Lee*
CASEY K. LEE
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2714
Fax: (212) 637-2686
casey.lee@usdoj.gov